GOODWIN (RYAN v.).    See Case No. 12,186.

---

### Case No. 5,554.

#### GOODWIN v. UNITED STATES.

[2 Wash. C. C. 493.] [1]

Circuit Court, D. Pennsylvania. Jan., 1811.

CUSTOMS DUTIES—FRAUDULENT ENTRY — IMPUTATION OF FRAUD TO CONSIGNEE.

1. Action of debt, in the district court, for the value of goods stated to have been fraudulently entered. The declaration states the goods to have been imported into Philadelphia, of which entry was made, and that the goods were not invoiced according to their actual cost at Liverpool, the place of their exportation, with a design to avoid the payment of the duties, or part of them; that the goods were of greater value than the amount of the invoice; and that the defendant was the person making the entry, contrary to the form of the act of congress, &c. The offence, under the act of congress, consists in the making of an entry upon an invoice, be-

---

[1] [Originally published from the MS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

low the actual cost of the goods, with design to evade the duties. No matter how fraudulent the invoice may be, still, if the entry is made according to the actual cost, the person making it is guilty of no offence. The law requires that the goods shall be entered at the market value at the place of exportation, deducting charges.

[Cited in U. S. v. Twenty-Eight Packages of Pins. Case No. 16,561; U. S. v. Batchelder, Id. 14,540.]

[Cited in State v. Eddy, 10 Mont. 311, 25 Pac. 1032.]

2. The declaration imputes to the consignee the offence of the exporter, and makes him liable for it, although the fraudulent intention is imputed by the declaration to the person making the invoice, and not to him who made the entry, and is prosecuted for the fraud.

This was a writ of error from the judgment of the district court, in an action of debt, brought by the United States against [John] Goodwin, under the 66th section of the "Act to regulate the collection of duties on imports and tonnage," March 2, 1799 [1 Stat. 677], for the value of certain goods alleged to have been fraudulently entered. The declaration stated, that after the passing of the act of congress, &c. certain goods, &c. were imported into the port of Philadelphia, &c. of which entry was made in the office of the collector of the port of Philadelphia, &c. to wit, five bales of blankets, &c. and that the goods, &c. so entered as aforesaid, were not invoiced according to the actual cost thereof at the place of exportation, to wit, at Liverpool, &c. with design unlawfully to evade the duties, or a part of the duties, upon the said goods, &c. and the said United States in fact say, that the said goods were of the value of 1500 dollars, &c. and that the said John Goodwin was the person making entry of the said goods, &c. as aforesaid, in the office of the said collector, &c. contrary to the form and effect of the said act of congress, &c. whereby, and by force of the said act, &c. an action hath accrued, &c. The goods belonged to persons in England, who were manufacturers, and who had shipped them on their own account. Goodwin, who made the entry, was their agent, and consignee of the goods. The goods were invoiced and entered according to what they had actually cost the manufacturers, but at less than the general market price or value at the place of exportation. The only question agitated in the court below, was, whether such entry was conformable to the act of congress? The district judge charged the jury, "that if the goods were entered according to invoices below the market price, as generally prevailing at the place of exportation, although according to the real cost and value thereof to the exporter at the place of exportation, the same were liable to forfeiture, and the defendant liable for the value thereof, &c.; that the law means the general value of goods, including all costs, charges, &c. making the total in general paid by the importers, and not merely the value to a manufacturer, or casual fortunate purchaser." The jury having found for the United States, judgment was rendered accord-

ingly [case unreported], upon which this writ of error was brought. It was assigned for error, that the district judge had misdirected the jury, as above stated; and also, "that in the declaration of the plaintiffs below, no offence against the act of congress is charged to have been committed by the defendant." Several other errors were assigned, which it is not material to notice.

For the plaintiff in error, it was contended, that upon a view of the different sections of the act of congress, goods should be invoiced and entered according to what they actually cost the exporter at the place of exportation, and not according to their market value there. The different sections speak of the entry being made according to the cost, prime cost, actual cost, actual and real cost, sections 36, 52, 66. In case there is no invoice, by which to ascertain the cost, then only is the value, ascertained by appraisement, to be the rule. The entry is to be made upon oath. The owner can tell what the goods cost him, but how can he safely swear to their general market value? The cost is fixed and ascertained—the market price fluctuating and varying—one thing to-day, another to-morrow. Upon the exception to the declaration—All circumstances necessary to constitute the offence must be laid in the declaration, and contra formam statuti will not aid the omission. Chit. Pl. 357; 1 Salk. 212; Cro. Eliz. 231; 5 Com. Dig. 358, 360. Every word stated in this declaration may be true, and yet no offence committed. To constitute the offence, the goods must be entered—entered on an invoice—the invoice produced to the collector—the invoice not according to the actual cost; and it must be with intent to evade the duties, or a part thereof. Under this declaration, the entry might have been made without an invoice; or the cost stated in the invoice may have been above the actual cost, or the market price; or the entry may have been made by an agent; in either of which cases, no offence would have been committed.

For the United States, it was argued, that the entry must be made according to the general market value or price, at the place of exportation. The policy of the law requires this, in order to have a uniform standard. Were it otherwise, it would be impossible to detect frauds upon the revenue; for who can tell what an article cost the particular importer, if it differ from the general value? It is true, the words of the law are, cost, and actual cost; but they are, cost at the place of exportation—not the cost to the manufacturer, or particular exporter—nor at the place of manufacture, or elsewhere—but at the place of exportation. If mere cost to the party were intended, there would be no need to say any thing about place. Accordingly, by the 66th section, if the collector suspects that the goods are not invoiced at a sum equal to that at which they have been usually sold at the place from which they are imported, he is to take them into custody, &c. until their value at the time and place of

exportation, be ascertained, &c. Why so, if the special cost to the particular importer, be the rule to enter by? By that construction, he may be entering his goods legally and truly, and yet the collector be bound to take them into custody, under this 66th section. As to the declaration, it follows the words of the act of congress. In laying an offence under a statute, there can be no better rule than to follow the terms of it. Here the very words used in the act of congress, are used in the narrative. If, then, that act creates an offence, this declaration must properly charge it. It states the entry to have been made with intent unlawfully to evade the duties, &c. This excludes the possibility of being innocently entered. It is said that under this declaration they may have been entered without an invoice. But that is not so; for it says, "the said goods, so entered, &c. were not invoiced according to their actual cost," &c. This imports an invoice. They could not have been invoiced above their cost or value; for the declaration says, it was "with intent to evade," &c.

Meredith, Chauncey, and Rawle, for appellant.

Mr. Dallas, Dist. Atty., for the United States.

WASHINGTON, Circuit Justice. This is one of those cases which too frequently occur, in which the court is called upon to interpret legislative expressions of doubtful import, without a clue to ascertain, with precision, what was the real intention of the framers of the law. After the closest examination of the point on which the controversy hangs, we can truly say, that our mind rather inclines to the opinion which we shall deliver, than that we feel a full confidence in its correctness.

The point of law to be decided in this case, arises out of the 36th and 66th sections of the act imposing duties; the former of which prescribes the rules by which goods imported into the United States are to be entered, with a view to the ascertainment of the duties to be paid thereon; and the latter imposes the penalty to be incurred by a violation of those rules. But, to arrive at any thing like a correct understanding of the subject, we must turn to some other sections of this law, and from the whole, obtain, if we can, a view of the system by which this branch of the public revenue was intended to be secured. In the first place, the owner, consignee, or factor, is required to make an entry in writing, and in the entry to specify the marks of the packages, and the prime cost, including charges, in the money in which the invoices are made out; and is also to produce the original invoices, or other documents received in lieu of them. The prescribed form of the entry specifies the value of the different articles subject to specific duties, as also the value of such as are subject to ad valorem duties. The entry is to be verified by an oath of the party making the entry,

that it contains a true account of all the goods so imported, and of the cost thereof, including all charges; that the invoice produced is genuine, and the only one received by him, by which he is charged, or is to account, and that he knows of no other, and that if he should thereafter receive any other, he will communicate it to the office. If, for want of an invoice, or for any other cause, an imperfect entry is made, so that the particulars of the goods are unknown, the goods are to pass to and remain in the possession of the collector, until the particular cost or value, as the case may be, shall be ascertained, either by the exhibition of the original invoices, or by appraisement, at the option of the importer; for which purpose two merchants are to be chosen, one by the collector and the other by the party, who are to value the goods; and their valuation is to be verified by the oath of the appraisers, that the prices affixed to each article are, to the best of their skill and judgment, the true and actual value or cost thereof at the place of exportation. The mode of ascertaining the ad valorem rates of duty at the place of importation, is to be, by adding a certain per centage to the actual cost of the article, including all charges; commissions, outside packages, and insurance only excepted. If the goods so entered, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereon, the goods themselves, or the value are declared to be forfeited. If the collector suspects that the goods are not invoiced as high as they have been usually sold for at the place from whence they were imported, he is to take and keep possession of them, until their value at the time and place of importation, is ascertained, in the manner prescribed in relation to imperfect entries, and until the duties so ascertained, are paid or secured; but in case of a prosecution to enforce the forfeiture, such an appraisement is not to exclude other proof of the actual and real cost of the goods at the place of exportation.

The whole cause turns upon the legislative meaning of the word cost. The district attorney contends, that it is synonymous with value, or market price; and the importer, that it means the price they cost the individual at the place of exportation. The term is certainly of equivocal meaning, and is sometimes used to express the value of a thing, and sometimes the price paid for it. If possible we must endeavour to find out from the law itself, the meaning attached to the terms, by the legislature who passed it. The actual cost at the place of exportation, and the prime cost and all charges, are clearly used synonymously by the legislature; for the importer is required, by the thirty-sixth section, to make his entry according to the prime cost, (not saying at the place of exportation,) and charges; and the sixty-sixth section, which imposes the penalty, drops the expression of prime cost and charges, and substitutes the other, actual cost at the place of exportation. What then constitutes

the actual cost of an article at any particular place, which is purchased there for the purpose of being exported, and which is actually exported? The answer is, the price given, and every charge which attended the purchase and the exportation, paid or supposed to be paid, at the place whence the article is exported. The actual cost of a bale of goods purchased at Liverpool, is composed of the price paid for it, or, in other words, the prime cost and charges, including commissions on the purchase, the packages, if any, and if the goods were purchased at the manufactory, then it includes not only the prime cost, and all charges attending them to the place of exportation, but also the charges before mentioned, and perhaps many others. What is the meaning of the market price, or value of an article, at the place of exportation? The answer is, the price at which such articles are sold and purchased, clear of every charge but such as is laid upon it at the time of sale. This is not only the general meaning of the expression, but we conceive the legislature so understood it, because the collector is directed to have the articles appraised, in cases where he suspects that the invoice price is below that at which the same kind of goods has usually been sold in the place whence they were imported, and the invoice price, we know, must be the actual cost of the articles at the place of exportation. Now, if these general definitions be correct, we are inclined to think, that the section of the law which relates to the mode of estimating the ad valorem rate of duties, will assist us, in no small degree, in expounding the terms on which all the difficulty hangs. These duties are to be estimated by adding a certain per centage to the actual cost, including all charges, commissions, &c. excepted. Now, if the actual cost of the article at the place of exportation, essentially includes all subsequent charges incurred at that place, including commissions, &c., and if the market price of the article at that place does not include them then it would seem that it was unnecessary to declare, that to the real cost there should be added all charges, if the real cost, as opposed to the market price, was intended. We are aware that it may be said in answer to this, that the charges were specified for the purpose of the exception, and perhaps this may have been the case; but certainly, if the actual cost necessarily includes all charges, the exception of commissions, &c. might, with strict propriety, have been made to the actual value, without specifying any particular part, of which the actual value was composed.

Having advanced thus far in our search after the legislative meaning of these expressions, let us inquire whether the other provisions of the law consist with the construction which the above course of reasoning seems to countenance: and how far it is practically conducive to the security of the revenue, the ultimate object of the whole system, and also to the convenience of the individuals from whom that revenue is to be

derived. For, if other parts of the law are at variance with this construction, or if its adoption shall be found in practice to subject the parties to be charged with the duties, to hardships which are unreasonable and unjust, these considerations may be sufficient to induce us to embrace the other construction which has been contended for. In the first place, then, it is natural to expect that the legislature, when it imposes upon the collector the delicate duties of detecting and prosecuting every attempt to defraud the revenue by an under valuation of the goods subject to duty, and for this purpose clothes him with very extraordinary powers; would, at the same time be inclined to furnish him with a standard, to which he might at all times appeal, without depending upon the integrity of the individual, whose conduct he is at liberty to suspect, and without an excuse for suspicion, where his conduct has been fair. If, then, the officer suspects that the goods are invoiced, not below their real cost, but below the price for which they have been usually sold in the place whence they were imported, he is directed to take and retain possession of them until their value, at the time and place of importation, is ascertained by appraisers, and the duties paid or secured. This step must always be inconvenient and injurious to the importer, and, therefore, we cannot suppose that the power was intended to be arbitrarily exercised, however slight the ground of suspicion might be. But who could say that the suspicion was obviously unfounded, if the price paid for the goods, and the charges, were the sum on which the duties were to be estimated? The invoice is the evidence of the party against whom the suspicion may be entertained; and whether that, or any other evidence of a fact with which the collector must be totally unacquainted, ought safely to be relied upon, may frequently be a mere pretext for suspicion, sometimes a justifiable ground of suspicion, but scarcely in any instance can the conduct of the officer, in this respect, be certainly condemned. But if the market price of the goods at the place of exportation, be that, including charges, upon which the duties are to be charged, then not only the fact to be ascertained, will correspond with the standard by which it is to be ascertained, but the standard itself is so far uniform and apparent, that the officer may, from other entries in his office, and from disinterested witnesses, at any moment test the fairness of any particular entry. It would seem strange, and in some measure absurd, to test the verity of a particular act by a standard totally unlike the act, and bearing no relation to it; and it must be admitted, that this incongruity would frequently happen, if the market price of any article were made the standard for fixing the price which that article actually cost.

Again; in the form of the entry, as prescribed by law, the importer is required to state, not the actual cost of the articles at the place of exportation, but the value of those, subject to the different rates of ad valorem duties. The change of expression in the very section, and upon the very subject where the cost is spoken of, seems to indicate that those expressions were considered by the legislature as synonymous; and this conclusion is strongly corroborated by the oath, which the appraisers are to take in the case of an incomplete entry; for they are to swear that the prices affixed to each article, are, to the best of their judgment, the true value or cost thereof at the place of exportation. The expressions are, not value or cost, as the case may be, in which case either might have been taken, but they are to swear in the alternative, although the value might have been much higher, or much lower than the price paid by the importer, and the charges; which proves that the legislature either used these words as synonymous, or have been guilty of a great absurdity, if not of something worse, in requiring such an oath to be taken. Against this construction various objections have been made; the principal of which is founded upon the oath of the person making the entry. If the market price is to govern, it is asked how can the oath be safely taken in any case, where the market price is different from the actual cost to the party? Now, if the difficulty which this question presents, will not be removed in every possible case, if the contrary construction be admitted, then the argument drawn from it loses a great deal, if not the whole of the weight attached to it; for it will not do to embrace a construction on the ground of convenience only, if the relief which it is to afford, is partial and inadequate to its object. And, although the owner himself may safely swear that the goods cost him the sum at which they are invoiced, how can the consignee, and still less the agent, swear what the cost is, with greater safety to his conscience than what the market price was? In both cases, he must depend upon the invoices, letters of advice, and other documents; and if he can pin his faith upon the correctness of one, he may with equal confidence upon that of the other. The fact is, that the oath is deemed in relation to the invoices, or other evidences of value, accompanying the goods, and ought not to be considered as affirming any thing upon the knowledge of the party. If this be not the case, we can only say, that construe the words actual cost as you please, and the oath, to say the least of it, is a very rash one. Another objection, somewhat similar to the one just disposed of, is the danger which a consignee would be exposed to, in relation to forfeiture, if he were compelled to enter according to the market price, which at no given time can be precisely stated or known. The answer to this is, that though he should make his entry below the market price, still he has been guilty of no breach of

the law, unless he acted fraudulently, and with design to evade the duties imposed. If he act wrong from such a motive, he has no right to complain.

Upon the whole, then, I think there are stronger reasons for embracing the construction given to this law by the district judge, and fewer inconveniences attending it, than that contended for by the appellant. The decree is, I think, correct upon the merits. That the defects pointed out in the declaration, do in fact exist in it, is not to be questioned; and the only inquiry is, whether they are cured by the statute of jeofails, enacted by congress. Many of them most certainly are, because they partake entirely of form. But the objection to the proper averment of the offence, is, we think, a substantial one, and goes to the heart of the declaration. It is admitted, that an omission to state the offence on which the prosecution is founded, is fatal; because, as no evidence need be given at the trial, but such as goes to support the allegations in the declaration, nothing can be intended, from the finding of the jury, to supply the omissions of the declaration, in this respect, or to satisfy the court that the party was convicted of any offence. Now, what is the offence, not under the sixty-sixth section, but under that and the preceding sections relative thereto? Most certainly, it is the making of an entry upon an invoice below the actual cost of the goods, with design to evade the duties. No matter how fraudulent the invoice may be, still, if the entry be made according to the actual cost, the person making the entry is guilty of no offence. Neither is he guilty of any offence, if he make the entry upon an invoice above the actual cost of the goods; because, in that case, the revenue is not defrauded, but is benefited. But this declaration makes the offence to consist in the existence of an invoice which did not agree with the actual cost, and upon this declaration, the United States were not bound, at the trial, to show that the entry did not correspond with the actual cost; for, if the fact had been, that the entry did correspond with it, or was even higher, still, the United States were entitled to a verdict, if the invoice was shown to be lower than the actual cost, no matter at what prices the entry was made. Besides, the invoice is generally the act of the exporter, and the entry always that of the importer, consignee, or agent. The declaration, therefore, imputes to the consignee the offence of the exporter, and makes him liable for it; and this too, although the fraudulent intention is imputed by the declaration to the person making the invoice, and not to him who made the entry, and is prosecuted for the fraud. Upon this ground, therefore, the judgment of the district court must be reversed.

[NOTE. The United States took the case to the supreme court on writ of error, and, a rule having been obtained by the defendant in error to show cause why the said writ should not be dismissed (the ground of the rule being that, as the cause was not removed from the district into the circuit court by appeal, but by writ of error, there was no provision, in any law of the United States, giving jurisdiction to the supreme court to re-examine the judgment of the circuit court), the court, in an opinion by Mr. Justice Washington, made the rule absolute. 7 Cranch (11 U. S.) 108.]