By the Court:

Jones, J.
There were numerous exceptions taken on the trial, all of which were abandoned on the argument of the appeal, except such as arose out of the submission to the jury, the determination of what was meant by the parties by the term cost used in their contract, and the charge of the court on that subject, and two objections to evidence which will be noticed hereafter.
The appellants insist: First—That the contract was undisputed, and that the court should have construed it; and that in so doing the court should have given to the word “ cost ” its usual and ordinary signification, there being no evidence that it had any other meaning. Second—That, there being no evidence that the word “ cost, ” as used in this contract, had any technical meaning, or that the parties attached to it any meaning other than its usual one, it was error to submit the case to the jury with the instruction that they were to look at the evidence in the light of their experience as business men, and were to arrive at a conclusion as to what the parties meant by the word “cost” from the circumstances in the case and their general business experience in matters of this kind; and Third—That it was error, under any circumstances, to instruct the jury that they might look at the evidence in the light of their experience as business men, and determine the point involved from the cir *605 enmstances in the case and their general business experience in matters of that kind.
Let us now consider these objections. The answer put in issue the terms of the contract as alleged in the complaint, and also the amount of damages sustained by its breach.
It is true the answer substantially concedes, as alleged in the complaint, that the amount to be paid for the hats was the cost-price and $2 a dozen in addition. On this point there is no question raised either by the pleadings or the proof.
But the complaint alleges that the cost-price, with the additional $2, amounts to a certain sum. This is denied by the answer. It was therefore necessary on the trial to establish this allegation; and, in establishing it, the meaning to be attached to the words “ cost-price ” was necessarily involved. The term “cost” is a relative one, and differs in its meaning according to the circumstances under which it is used: thus, the cost-price to animporter is one thing, to a jobber or middle-man another,to a retailer another, and to a purchaser from a retailer still another. In determining what the contracting parties mean by the term, reference must be had to the situation of the parties and the circumstances under which the word is used. Ordinarily it would refer to the sum which the seller had himself paid for the article ; but it may refer to the sum paid to its original producer, or to some one of the numerous holders through whose hands it has passed between the original producer and the immediate seller. To what it is meant to refer by the contracting parties must be judged of by all the surrounding circumstances.
Now, in this case, it is evident that both parties contemplated that the sellers should receive $2 profit; and consequently that a proper proportion of the general expenses of carrying on the business, such as rent of the buildings, insurance, book-keeper’s salary, light, fuel, &c., should enter into the cost as well as the bare cost of the material and of the labor directly bestowed on it. These matters necessarily enter into the cost of an article to the manufacturer. It is apparent that a manufacturer must take all these matters into consideration in fixing the cost of his manu *606 factored article, which is, that price at which he can afford to. sell it without positive loss to himself ; and it is also apparent that it is necessary for him to keep a record of such assigned cost, for it is by this means that he is to keep -track of his business, determine how much he is to charge for a profit, the amount of profit he makes on any particular species of article, to what extent he can vary his charge for profit to shit the market and the demand for the article, to regulate him in making his bargains for sales, and to keep the run of his losses on the article.
The natural power of our reason teaches us that this must necessarily be the mode in which manufacturers transact their business, and ascertain the cost of their articles; and by the same power we are also taught that when a manufacturer speaks of the cost of articles manufactured by him he refers to the cost thus assigned.
The affirmative evidence given by the plaintiff in this case shows our reason not to be at fault.
It shows that the plaintiffs kept such a record in books called lot-books; • it also shows that at the time of the sale the lot-' boobs were in the minds of both parties, and the cost therein set down was referred to as the cost over which the $2 profit was to be receivéd.
“ Hr.' Be Comean thén asked me (Henry Samuel) what I thought the hats would come to, and I told him Hr. Herst and his son were busily engaged in calculating it at that time from the lot-booTcs, and that I would let him know. A short -time afterward Hr. Herst came down stairs and told me the amount,, and I told Hr. Be Comean. I told him they would come to something like $9,000 or $10,000. Hr. Be Comeau said it was all right.”
The hats did in fact come to $9,800.75.
This evidence, together with the other facts and circumstances ■ above referred to, and the fact that t^e purchaser was a business man (being a general commission merchant), and knew plaintiffs' to be manufacturers, amply justifies the verdict of the jury finding' that the cost, referred to by the parties was that assigned in the' *607 lot-books. It is unnecessary, therefore, to discuss the question whether, conceding there was no evidence tending to show that these parties attach a different meaning to the word “ cost,” it devolved on the court, and not on the jury, to construe the meaning of the word as used by them; for the jury having given that construction which the court should have given, if it were within its province, a verdict will not be set aside for an error in submitting the question to the jury.
In this case, however, there was evidence given, in behalf of the' defendant, tending to show that the parties attached a different meaning to the word “ cost” as used by them. Mr. De Gomeau was satisfied of that at the time of the contract; he said to Mr. Blaylock, in the presence of Mr. Samuel: “ It will be necessary for me, in order to examine and ascertain the cost of these goods, to have a detailed copy of the mixtures. I said it was my intention to ascertain the cost, as I wished to be furnished with the mixtures, for the purpose of ascertaining the cost of these goods. He told me Mi'. Samuel would make it out and forward it, and Mr. Samuel said, ‘ Certainly, I will send it around to your hotel this evening.’ ”
This evidence, if credited, tends to destroy the effect of the evidence of Samuel, and also the effect of the necessary course of business of manufacturers in making up lot-books fixing therein to the cost of the manufactured articles a sum at which sales can be made without a loss, and tends strongly to show that the meaning attached by the parties to the word “cost” was the actual cost of the material and labor in the market, at the time of the purchase of the material and performance of the labor; and would, with other evidence in the case, have sustained a verdict finding that to have been the meaning of the parties.
On the part of the plaintiffs, however, it was testified that Mr. Be Comean said he only desired to have “a general idea of what the hats were made of, so that he could tell his customers the ingredients, or what the hats were made of—the name of the fur.”
*608 Thus there was contradictory evidence as to the meaning attached by the parties to the word cost used by them; and hence it became a proper case for the jury to decide, as to what was the meaning they attached to it.
In deciding on this conflicting evidence the jury were at liberty to bring to their aid their own experience of things," the natural power of their reason, and an application of those principles on which they would act in their affairs of ordinary life; for, as Starkie says, it is by thesé aids they must necessarily decide (Starkie on Ev., vol. 1, p. 14); and, as Graham says, “ the idea of the superior qualification of juries to decide issues of fact is based upon the presumption that their association with everyday life gives' them" just views of men and things, and enables them to form correct conclusions. The judge not only may but ought to instruct them that in considering their verdict they are to make use of their own experience so far as it shall be the guide to their reason” (Graham on New Trials, vol. 8, p. 833.)
They have the right to draw from proven or known facts such inferences and considerations as their power of reason and general experience teach them to be the usual or necessary consequence thereof, and in so doing to bring to their aid their experience of the motives that govern human action generally, or of human action under the particular circumstances of the case before them, and also their experience in the daily transactions of life, including necessarily their experience (if they have any) in transactions of the nature of the one out of which the cause before them may have arisen.
True, the law now is (although formerly it was different) that the jury cannot decide an issue on their own personal knowledge of the facts in dispute; but when certain facts are proved they may draw from them such inferences and conclusions as their experience or power of reason teaches them to be ordinary or necessary concomitants or consequences of the proven facts.
Appellants’ counsel has misapprehended the charge in this case. He makes the point that, by the charge, the jury were permitted to find for the plaintiff, on their general experience as to *609 the meaning of the word cost, without any evidence on that subject.
Not so. It has already been shown that there was sufficient evidence that the parties, when they used the word “ cost,” referred to the sums set down in the lot-books, as the cost of the articles, to carry the case to the jury, and that there was evidence for the other side tending to show that actual cost was referred to. The judge left it to the jury to determine what the parties referred to when they used the word “ cost,” charging them that they must decide the point from the circumstances in the case, applying thereto their general business experience in matters. of that kind, as men of ordinary reason and experience. This is the sole effect of the charge and is perfectly proper.
It is true the judge told the jury there was nothing said, particularly referring to the lot-book, overlooking the evidence at folio 167. We cannot, however, say that the jury overlooked that testimony, or that they'excluded it from their consideration. On the contrary, we must assume that, notwithstanding the charge of the judge, they had that evidence in mind when considering this verdict. —
As the case was tried on the theory that plaintiffs were bound to show that the contract was to pay the cost assigned to the goods in the lot-books, and two dollars a dozen in addition, or else wholly failed, it is obvious that it was wholly immaterial whether the books stated the exact cost or not, unless the costs had been fraudulently exaggerated in the books; and it is also obvious that the books were competent evidence of the costs therein stated.
Judgment affirmed, with costs.