MORRIS, RESPONDENT, v. EDWARDS, APPELLANT.

CONTRACTS—*Interpretation*—*Sales of personal property.*— A contract for the sale of a stock of goods expressed as a consideration "seventy-five per cent of the present wholesale cost at the present time, with freight added, at present rates and classification." The vendee withheld twenty-five per cent on the freight as well as the stock. *Held*, that only the cost of the stock was subject to discount, and the freight should be paid in full.

*Appeal from First Judicial District, Lewis and Clarke County.*

The cause was tried before HUNT, J., upon an agreed statement of facts. The plaintiff had judgment below.

Statement of the case, prepared by the judge delivering the opinion.

This case was tried upon an agreed statement of facts, from which the following appears:—

Plaintiff sold defendant a stock of goods. In their contract of sale is the following clause: "And the said party of the second part agrees to and with the said first party, who hereby assents to the same, to pay said first party, his personal representatives and assigns, for said stock in trade and merchandise, seventy-five (75) per cent of the present wholesale cost at the present time, with freight added, at present rates and classification, to be paid as soon as invoice is taken and the cost as aforesaid of the entire stock in trade and merchandise aforesaid is ascertained."

In pursuance to the contract the parties agreed that the wholesale cost of such stock was $5,309, and that freight on the same "at present rates and classification" was $1,327.25. Seventy-five per cent of the valuation of the stock is $3,981.75. Seventy-five per cent of the freight is $995.44. The sum of these two amounts is $4,977.19. This was paid by defendant to plaintiff. The difference between the whole amount of freight, $1,327.25, and seventy-five per cent thereof, $995.44, is $331.81. Plaintiff claims that this additional sum should be paid. Defendant resists its payment. The controversy is upon the terms of the contract above recited. The parties agree that seventy-five per cent of the valuation of the stock should be paid; but plaintiff contends that defendant should pay the whole of the freight, and defendant maintains that he should pay only seventy per cent of the same; that is to say, that the words "seventy-five per cent" refer to the freight as well as to the stock; or in other words, that freight should be added to seventy-five per cent of the stock, and not to the whole. The District Court gave judgment upon the plaintiff's view, from which the appeal is taken.

*Henry C. Smith,* for Appellant.

*J. W. Kinsley,* for Respondent.

DE WITT, J.—No briefs were filed or authorities cited by
counsel. This court must construe the contract, and from its
terms find its intent. The language of the contract is of the
nature of a Delphic oracle, and is possibly open to two con-
structions; but we are of opinion that the circumstances throw
light upon the intent. The subject of the contract was the
sale of the entire stock of goods. Its wholesale value was dis-
counted twenty-five per cent. We believe that we can see a
reason for this. It is known to merchants, trading as these
parties were, that even undamaged goods become shop-worn,
out of style, out of demand, out of season, and their salable
qualities are variously affected by the simple lapse of time.
Would not a buyer naturally demand, and a seller accede to
a reduction from wholesale prices for these reasons? Other-
wise there would be no reason for a buyer to take such a stock.
If he were to pay full wholesale prices, might he not better go
to the wholesale dealer directly, and buy wholly new goods?
We can thus see a reason for a reduction on the goods. But
this reason does not obtain with freight. Freight is money
paid for the transportation of goods. The money so paid does
not deteriorate in value. It does not become shop-worn, out
of style, out of season, out of demand, or for any reason
unsalable. It is worth as much on old goods as on new. It
is itself worth as much old as new. In fact, age gives it an
additional value, if we consider accrued interest, which, how-
ever, is not here under view, for the parties agreed to freight at
"present rates and classification." These words aid us in our
view that the parties did not intend any discount on the freight.

The contract is not clear in its terms, but we are satisfied, for
the reasons above suggested, that the judgment of the District
Court must be affirmed.

HARWOOD, J. (concurring).—In view of the language of the
contract, I regard the question presented to this court as a very
close and difficult one. If, in contracting for the purchase of
a stock of merchandise, A says to B, "I will pay you for this
stock seventy-five per cent of the present wholesale cost at the
present time, with freight added, at present rates and classifi-
cation," what do the contracting parties intend? In the fore-

going proposition, in stating the terms, I have adopted the exact language and punctuation of the contract as found in the record. Counsel for the purchaser contends that said form of words means that both the price of the goods at wholesale and the freight shall be discounted twenty-five per cent. Contrary to this, the seller contends that the wholesale price of the goods, only, was to be discounted, and the present cost of the freight was to be added. Counsel for respondent suggests that there are reasons for discounting the price of said goods—that some goods are shelf-worn, damaged, out of style or demand; while the freight as an element of cost was a fixed item of value in the goods, having been paid out, and would not suffer depreciation, and therefore the seller would not intend to discount that portion of the cost. I deem such reasons or suggestions entitled to no consideration in our attempt to interpret and ascertain from the language of this contract the intent of the parties in the particular matter in question. Such suggestions pertain to the motive of the seller for discounting the price of his stock of merchandise, and we have no evidence of what his motive was. It could with equal force be suggested that the seller agreed to the discount because he desired to engage in some promising speculation, or because he desired to retire from business altogether.

If we had positive evidence that the motive for discounting the cost of the goods was because some were shelf-worn, or out of style or demand, still it appears to me that there is a fallacy in the argument that such damage or depreciation only affected one part of the investment in said goods. Suppose a merchant should pay one dollar for an article at the wholesale market and another dollar for the transportation of said article to his place of business. Of course, the cost of the article to him would be two dollars. Now, according to the theory of respondent's counsel, if said article should become "self-worn," so that its value was depreciated thereby, the depreciation or shelf-wear would all be upon the dollar of the cost paid to the wholesale dealer, and the item of cost paid by way of freight remains fixed and undiminished. As a result of such reasoning the article would never depreciate in value below one dollar, although it became utterly worthless in the eyes of all dealers

and consumers ; and in case the owner sold the article, promising to discount the cost a certain per cent on account of "shelf-wear," or without saying for what reason the discount was made, as in the case at bar, there would be a presumption that the seller did not intend to discount the item of cost involved in the freight, "for that could not become shelf-worn." I do not think that practical merchants are governed by such theories. Moreover, the contract before us shows by its own terms that no such considerations had any bearing upon the intention of the parties in stipulating for said discount. The damaged goods, if there were any, were excluded from the contract by the following provisions : "That such goods as toys, cards, poker-chips, smokers' articles, cigars, tobaccos, and notions, . . . . incomplete sets, hanging lamps incomplete," etc., "and all goods or merchandise which are cracked, chipped, or damaged in any way, are not included or embraced in this sale and agreement." And further, the purchaser reserved the right by the terms of said contract to reject five hundred dollars' worth of said goods at wholesale, in case the parties to the contract could not agree upon the price thereof.

It should be borne in mind that there is no evidence before us of the circumstances which surrounded said transaction, and the parties thereto, except the terms of the contract. "The circumstances under which [a contract] was made, including the situation of the subject of the instrument and the parties to it, may be shown so that the judge be placed in the position of those whose language he is to interpret." (Comp. Stats. § 632.) But in this case no such circumstance of the subject-matter of the contract and of the parties thereto has been shown to shed light upon the intent of the parties in respect to the particular matter in controversy. We have nothing but the contract to guide our endeavor to find the true intent of the parties. It is improper for this court in construing this contract to assume that any of said goods were "shop-worn, or out of style or out of season," for there is nothing in the contract, and no evidence *aliunde* showing that any of said goods subject to the contract were in that condition. It cannot be properly inferred from the language excluding certain classes of goods, and all "cracked," "chipped," and "damaged goods," from the contract. From

all that can be gathered from this record before us, there is nothing to indicate that said stock of merchandise was an old or a new stock, or partly old and partly new. It is as legitimate for us to assume that the stock was all new and in season and style, as to assume that any of it was shop-worn or out of style or out of season. We know from the contract that the *subject* of the bargain was "all the stock in trade and merchandise, except what is hereinafter mentioned, in that certain store called and known as 'Morris' Crockery and Glassware Store,' of said party of the first part, in the city of Helena, Montana."

No authorities were cited by counsel on either side. The conclusion I have reached in concurring is based upon the following considerations:—

It seems clear, in reason and on authority, that if the contract had stipulated that the purchaser would pay "for said stock in trade and merchandise seventy-five (75) per cent of the present wholesale cost at the present time," and had stopped there, the freight would have properly been added as part of the *cost;* and of course in that case the discount would have been taken from cost of freight as well as the price of the goods, because the freight is properly an element of the *cost* of merchandise. (*Buck* v. *Burk,* 18 N. Y. 337; 1 Sweeny, 590; *Goodwin* v. *United States,* 2 Wash. C. C. 493.) But the contract does not thus provide. It separates the cost, or the price which the purchaser is to pay under this contract, into two component parts—the wholesale cost at the present time, "with freight added" at the present rates. The freight was to be *added* to something in ascertaining what amount the purchaser should pay.

The opinion of the learned judge of the District Court upon this case is in the record. He observed: "It is admitted by counsel on both sides, and evidently intended to be embraced in the statement agreed upon, that the wholesale cost of the stock in trade and merchandise sold by plaintiff to defendant was to be estimated by the bills as they were contracted by the plaintiff at the place or places of purchase; and that in estimating such cost and defining the words 'wholesale cost,' the significance should be the actual sum paid for merchandise at the point where the bill was contracted." Looking at the two distinct

propositions, which combined make up the purchase price to be paid by the buyer, he held that the clause " seventy-five per cent of" should be limited to the first proposition which followed it; i. e., the wholesale cost of the merchandise at present prices.　I am of opinion that such is the proper construction to put upon the clause in question, unless the contract clearly shows a different intent.　I therefore concur in affirming the judgment of the lower court.

BLAKE, C. J.—I think that my brethren have interpreted correctly the contract of the parties, and concur in the judgment.