- BUCK *v.* BURK.

The defendant, a shopkeeper in New York city, agreed to pay a debt of $2,000 in "merchandize out of my store, 44 Maiden Lane, on demand; said mdze. to be sold and delivered at not above twenty-five per cent of the cost price." *Held,*

1. That his obligation was discharged by delivering goods at prices twenty-five per cent above the cost to him, though much more than twenty-five per cent above the wholesale market price at the time of delivery.

2. That he was at liberty to continue selling his goods, without replenishing the stock, until demand for a delivery in full of the contract; and that so long as he retained sufficient for that purpose, the other party could not complain that he was left to a selection from an inferior assortment, and goods less marketable than at the date of the contract.

3. That after reasonable notice to select his goods at the place named in the contract, the plaintiff was bound to accept them at any other reasonably convenient place to which they might be removed, and that a subsequent demand at the original place, or elsewhere for delivery at the original place, was ineffectual.

4. A refusal to deliver goods to the value of $20, which had been packed up in boxes for removal, after the notice to plaintiff to call for his pay at the defendant's original location, did not constitute a breach of the contract.

5. The contract permits the demand of merchandise in parcels.

APPEAL from the Superior Court of New York city. The complaint stated that on April 27th, 1854, the defendant was indebted to the plaintiff in the sum of $2,000, for land before that time sold and conveyed to him by the plaintiff, and that for the said indebtedness the defendant made and delivered to the plaintiff a promissory note in these words :

"Due to William J. Buck, or order, two thousand dollars mdze. out of my store, 44 Maiden Lane, on demand, for value rec'd; said mdze. to be sold and delivered at not above 25 per cent of the cost price. N. Y., April 27, '54.

"JAMES BURK, Jr."

The cause was tried before a referee, who found that after the giving of the note, and prior to March 9, 1855, the

plaintiff authorized and directed different persons to receive merchandise from the defendant in payment of the note, and that such persons did receive goods at the defendant's store, 44 Maiden Lane, to the amount of $1231.55; that the defendant charged for the goods so delivered from thirty to forty per cent above the cost at wholesale market price for such goods, but not more than twenty-five per cent above the cost price of the goods to the defendant. Some of the persons thus authorized refused to receive them because the defendant charged as aforesaid. Most of the defendant's stock of goods had been purchased by him in and prior to 1850, and the greater part had depreciated in value and were unsaleable, owing to their having become unfashionable and out of style; the defendant not replenishing with fashionable goods so as to keep up a full stock. In the spring of 1855, and just before the defendant removed his goods from No. 44 Maiden Lane, the plaintiff sent to said store for goods amounting in value to from $15 to $20, which the defendant then had on hand. The person sent designated the goods he wanted, and requested the delivery of them upon the note. The defendant declined on the ground that he had boxed the goods up to move, and said he could not get them out. The defendant removed the balance of his stock then on hand, from No. 44 Maiden Lane to No. 2 Astor House, Barclay-street, where the goods remained two or three months. The defendant, before such removal, notified the plaintiff to come and take goods in payment of the note. On the 13th of December, 1855, long after the removal, the plaintiff demanded payment of the note in goods, at the store No. 44 Maiden Lane; and on January 2, 1856, he demanded of the defendant, at No. 2 Astor House, Barclay-street, that he should pay the note in goods at No. 44 Maiden Lane.

The defendant, in answer, said that he had the goods at his house, and that if the plaintiff would come to his house when he was there, or fix a time when they could meet at

his house, he would pay the note in goods. The plaintiff did not select any specific goods to be delivered in payment, nor did the defendant tender any specific goods, nor make a selection of goods to pay the plaintiff, and notify him of such selection. The referee reported in favor of the plaintiff, who had judgment for $849.13, besides costs, which having been affirmed at a general term, the defendant appealed to this court. The cause was submitted on printed arguments.

*John C. Dimmick,* for the appellant.

*James Crombie,* for the respondent.

SELDEN, J. It is plainly to be inferred from the circumstances disclosed in this case, that the note given by the defendant to the plaintiff, payable in merchandise, was executed and delivered in pursuance of an original contract, by which the plaintiff had agreed to accept such note in payment for the land sold. The tenor of the note itself repels the idea that it could have been received upon a cash indebtedness for land previously sold; and this conclusion is sustained by the whole conduct of the plaintiff in relation to the note, as well as by the frame of his complaint. There is no foundation, therefore, for his position, that he is entitled to recover as for lands sold and conveyed.

The terms " twenty-five per cent of the cost price," used in the note, must of course mean twenty-five per cent over or above the cost price. No other rational interpretation can be given to them, and no other seems to be seriously insisted upon by the plaintiff's counsel. The nature of the transaction and the circumstances attending it, so far as they are disclosed, forbid any other construction.

The plaintiff insists that, by the terms "cost price," was meant, not the actual cost of the goods to the defendant, but what, according to fair market rates, they should have cost. I can see nothing whatever, either in the tenor of the

note, in the transaction itself, or in the condition and circumstances of the parties, to support this construction; and in the absence of any thing indicative of such an intent, we are bound to follow the plain literal meaning of the language used. The words "cost price" obviously meant the price paid for the goods by the defendant; and any other interpretation would be strained and unnatural. The plaintiff cannot sustain his claim, therefore, upon the ground that the defendant charged from thirty to forty per cent more than the then wholesale market prices for such goods; the referee having found that he did not in any instance charge more than twenty-five per cent above their actual cost to him.

But it is contended that the defendant violated his agreement, first, by refusing to deliver the $15 or $20 worth of goods called for by the agent of the plaintiff in the spring of 1855; and again by his subsequent refusals in December, 1855, and January, 1856, to pay the balance due in goods, at the store, No. 44 Maiden Lane; and it is upon these grounds that the plaintiff mainly bases his right to recover the balance of the note in money.

The effect of the refusal to deliver the small amount of goods demanded in the spring of 1855, assuming that the plaintiff had a right to call for payment from time to time in parcels, of which I entertain no doubt, turns in a measure upon the same questions as to the construction of the note, and as to the mutual rights and obligations of the parties which are raised by the subsequent refusals to pay. If the defendant was bound by his agreement to keep perpetually and at all times a stock of goods at the store in Maiden Lane, sufficient to meet the balance due upon this note, and had no right under any circumstances to remove his goods from that store until the note was paid, then it was no excuse for his not delivering the goods that they had been boxed up preparatory to removal. On the other hand, if he had a right to remove after a reasonable time had elapsed for

the plaintiff to call for and obtain payment, and after due notice of his intention to remove; then a question would arise whether it was reasonable under the circumstances to require the defendant to unpack his goods for the purpose required, or whether the plaintiff should not have waited until the goods had been transferred to some place where the delivery could be more easily made. Although the note is payable at any time on demand, yet the plaintiff would not have a right to call at midnight, and if he found any one sleeping in the store, require at the hands of such person a delivery of the goods. Every one must assert his rights with a reasonable regard to the convenience and rights of others.

I deem it unnecessary, however, to dwell upon this part of the case as, if the defendant was in default for not delivering the small parcel of goods in question, this default was, I think, clearly waived by the subsequent repeated demands for payment of the note in goods. In *Gould* v. *Banks* (8 *Wend.*, 562), there had been a refusal to deliver specific articles pursuant to agreement, and a right of action had accrued. Upon a subsequent offer to deliver the articles, the plaintiff had refused to receive them; putting his refusal, however, not upon the ground of the previous neglect to deliver, but upon other and distinct grounds, and the court held that he had waived his right of action founded upon the first refusal. If then a bare omission to insist upon a previous default, as a reason for refusing to accept the articles when offered, operates as a waiver, *a fortiori*, must a subsequent actual demand of the articles have that effect. If we assume that the defendant had a right to remove his stock of goods, and that, after notice and an opportunity to take the goods at the place named, the plaintiff could be required to receive them at some other convenient place, then the case is substantially identical with that of *Gould* v. *Banks*, inasmuch as the defendant offered to pay the note out of the stock of goods which had been removed from the

store in Maiden Lane, and the defendant did not put his refusal, either upon the ground that there had been a previous default on the part of the defendant, or that the place where the goods then were was remote or inconvenient, but insisted, as is plain from the finding of the referee, that the defendant was still bound to make the payment at No. 44 Maiden Lane.

The whole case turns, therefore, upon the question whether the obligation imposed upon the defendant by the note in question, to keep a stock of goods in the store in Maiden Lane, was perpetual, and one from which he could in no manner be relieved, until the plaintiff should see fit to call for payment, or until the statute of limitations should attach.

This question is not without difficulty — the terms of the note, if rigidly construed according to their literal import, would seem to impose such an obligation. But the law assumes in many cases to give to contracts a reasonable interpretation which, although it may slightly vary from the strict letter of the agreement, preserves, nevertheless, all the substantial rights of the parties. Thus, as already suggested, the note in this case, although payable on demand, without regard to time, could not be demanded at midnight when the store was locked. So, a note payable at a bank on a certain date, which in terms permits the holder to select his own hour for presentment, must nevertheless be presented within the ordinary banking hours. A party to a contract is bound to pay a reasonable regard to the interests of the other party, although his contract may not in terms require it; as if one covenants to indemnify another against all damages which may result to him from a certain event, there is no doubt that the party indemnified would be bound to make reasonable efforts to prevent unnecessary damages.

In all these cases, and many others which might be suggested, the law departs from the strict letter of the contract because it is required by a just regard to the interests of

one of the parties and does no appreciable injury to those of the other. Upon this ground it is held, that one who has entered into what is called a "continuing guaranty," that is, who has undertaken to be responsible for moneys to be advanced or goods to be sold to another from time to time, may nevertheless terminate his responsibility by giving notice that he will not remain liable after a certain time (*Add. on Con.*, 668.)

Such a contract bears a close analogy, in the particular in regard to which it is departed from, to that under consideration. Both give the contractee the selection of the time or times when he will avail himself of the contract; and both are without limit as to the period of its duration. The right to put an end to the party's responsibility in the case of a continuing guaranty is in no way derivable from the contract itself, but is in derogation of its terms. It results from the unreasonableness of holding the party to a perpetual responsibility. It is obvious that far less violence is done to the terms of the agreement in this case, by holding that the defendant, after the lapse of nearly a year from the giving of the note, could relieve himself from the obligation to pay at a particular place by giving notice of his intention to remove, than in the case of the continuing guaranty. There the party is permitted to discharge himself from all obligation arising under the contract after the time specified. In this case he must still pay the note in full, notwithstanding the holder may have entirely disregarded the notice.

Assuming as I do, therefore, that the mention of the store in Maiden Lane in the note was intended to designate a place of payment, I think that the principles and analogies to which I have referred justify us in holding that the defendant might terminate his obligation to pay at that particular place, by giving reasonable notice of his intention to remove his goods. The plaintiff can have no good reason to complain, after having had an entire year in which to call from time to time for the goods, that he is required

either to make his selection from the stock of goods at the place provided in the contract before their removal, or consent to receive payment at some other place equally convenient. There is nothing in the finding of the referee, or in the case, which shows that the place to which the goods were removed was not a convenient one for the plaintiff to receive the goods; nor does he appear to have put himself upon that ground.

The Superior Court seems to have finally disposed of the case upon the assumption that the defendant had no right to insist upon making payment out of the reduced stock remaining on hand at the time of the removal; but that the plaintiff "had a right to be paid out of a store containing as good an assortment as the defendant, had when the contract was made."

This position cannot, I think, be sustained. There is nothing in the contract which binds the defendant either expressly or impliedly, to replenish his stock. The plaintiff had an opportunity to make his selection from the goods on hand when the note was given, and if he chose to wait to a subsequent period he ran the risk of a reduction of the stock. It would be a very material addition to the contract, and one which the facts will by no means warrant, to hold that the defendant was bound to keep up an assortment as large and of goods as marketable as those in the store at the date of the note.

It follows from the views which have been expressed, that the judgment should be reversed and that there should be a new trial, with costs to abide the event.

COMSTOCK, J., also stated his conclusions as follows:

I. The plaintiff cannot recover on a consideration prior to the note. The action is on the note, and the circumstances of the prior indebtedness are not set forth. The reasonable inference from the averment in the complaint is, that the

land sold was to be paid for as provided in the note. Again, the recovery below is actually on the note.

II. By the terms of the contract the plaintiff had a right to demand all the goods at any time. The goods were at all times due from the defendant when demanded. It follows that he was not bound to continue his business and keep a store at No. 44 Maiden Lane or elsewhere, indefinitely, nor any longer than suited his own convenience. It may be that, before relinquishing his business or removing his goods to some other location, he was bound to give to the plaintiff a reasonable notice to come and get his pay. But this he did do, and the plaintiff neglected to comply with the request.

III. The plaintiff having failed to come and take the goods at No. 44 Maiden Lane, when requested, the defendant, if he chose to discontinue the business, was only bound to keep goods enough to pay the note at some other reasonable and convenient place. The contract does not fix 44 Maiden Lane absolutely as the place of payment. The language, is "out of my store, No. 44 Maiden Lane," &c. This only designates the situation, at the time of the contract, of the stock of goods out of which the payment was to be made. Clearly, the defendant might lease an adjoining store, remove the stock there and carry on the business. If he did so, a demand would be good there and would not be good at No. 44. It follows that he had a right to keep the stock for a time at No. 2 Astor House, and then to remove it to his own house within the city. The plaintiff cannot complain that he did so after neglecting to call and take the goods at No. 44, as requested. So far there is no breach of the contract.

IV. If we concede (which I think doubtful) that the contract was not entire, but admitted of any number of demands for small installments, yet the demand of goods to the amount of $15 or $20 was not a reasonable one in respect to the time and circumstances. After fair notice to come and get

his pay and notice that defendant was about to remove, it was vexatious to demand some minute portion of the pay after the goods were packed. When the goods were thus packed, business was discontinued at that store. If the plaintiff had only demanded a paper of pins I think he could not require the defendant to open his boxes and deliver the parcel. Again, the Superior Court is of opinion that the refusal to deliver the small parcel was a breach of the contract only to that extent—and this must be so if the contract gave a right to demand in parcels. On that construction it becomes, in effect, a contract payable by installments. The refusal, therefore, was no breach of the whole contract.

V. The defendant kept up his store for a year, and during that time paid more than half the note in goods as demanded. The plaintiff, as already stated, had a right to demand the whole at any time during the year. Having failed to do so on request, he cannot complain that the stock became depreciated and unfashionable. The contract did not bind the defendant to add to his stock on hand or to refrain from selling to others, so long as he kept enough to pay the note. If this be not so, then the defendant could be compelled to continue his business and keep up his stock for an indefinite time, which is not in the contract.

VI. The demand made in December, 1855, at No. 44 Maiden Lane, was good for nothing, because the defendant had then removed seven months before. I make the same observation as to the demand in January, 1856, at No. 2 Astor House, requiring the note to be paid at No. 44 Maiden Lane. Both these demands proceeded upon an erroneous view of the contract. The judgment should be reversed.

All the judges were for reversal; JOHNSON, Ch. J., DENIO, PRATT, ROOSEVELT, Js. (and perhaps others), concurring with SELDEN, J., that the contract permitted the demand of merchandise in parcels.

Judgment reversed and new trial ordered.