## QUINTON et al. v. NEVILLE et al.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1907.)

No. 2,222.

1. EQUITY—BILL OF REVIEW—HEARING AND DETERMINATION.
   Where it is the purpose of a bill of review to obtain a reversal of a decree for error of law apparent on the record, consideration can be given to the record of the original cause only, the evidence at large cannot be examined or considered, and any facts averred in the bill of review inconsistent with the pleadings and decree in the main case can have no effect in determining the correctness of such decree.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 1133, 1134.]

2. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR WITH WILL ANNEXED—POWERS.
   An administrator c. t. a. duly appointed under the laws of Nebraska, which was the state of the testator's domicile, is charged by Comp. St. Neb. 1903, §§ 2983, 2987, with the execution of the trusts conferred upon the executor named in the will, and may maintain any suits necessary or incidental thereto which could have been maintained by the executor.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 493.]

3. QUIETING TITLE—TITLE OF PLAINTIFF—FOREIGN ADMINISTRATOR—KANSAS STATUTE.
   Under Gen. St. Kan. 1901, §§ 7961, 7966, which provide that the recording of an authenticated copy of a foreign will relating to real estate within the state in the probate court of the county in which the real estate is situated, operates to pass the title thereto in like manner as is done by domestic wills, and section 3009, which empowers a foreign executor or administrator to sue and be sued in that state, a foreign executor or administrator c. t. a. directed by the will to sell lands in Kansas to pay debts of the estate, who is in possession of the land, and has so recorded a copy of the will, has such title and possession as entitles him to maintain a suit to remove a cloud upon the title which would interfere with his execution of the trust, and to redeem from an equitable lien on the land created by the testator.
   [Ed. Note.—Necessity of possession in suits to quiet title, see note to Jackson v. Simmons, 39 C. C. A. 522.]

4. SAME—CONTRACT BY TESTATOR CREATING EQUITABLE LIEN—CONSTRUCTION.
   An owner of lands who employed attorneys in certain litigation in respect thereto entered into a written contract with them by which it was agreed that, when the lands were sold, they should receive in payment for their services one-third of their net proceeds above $60,000 and which also provided that the lands should not be sold without the consent of all the parties. Held, that such agreement contemplated a sale of the lands for the purpose of fixing the amount of the attorneys' compensation and of paying the same, and that the clause requiring the consent of all parties to such sale, fairly and reasonably construed, must in subordination to such purpose be limited to a reasonable period of time; that after the lapse of 10 years, during which the attorneys had recorded the contract, the owner had died, and neither he nor his executor had been able to agree with the attorneys as to the price at which the land might be sold, his administrator c. t. a., directed by his will to sell the lands, was entitled to maintain a suit in equity to remove the cloud cast upon the title by the recording of the contract, and to have a sale made subject to the payment from the proceeds of the compensation to the attorneys stipulated for therein; and that a decree in such suit providing for the receiving of bids for the lands during a period of four months at not less than an

upset price fixed therein before it should be offered at public sale fully protected the rights of all parties under the contract.

Appeal from the Circuit Court of the United States for the District of Kansas.

In March, 1892, the appellee Neville, as administrator with the will annexed of the estate of Morrell C. Keith, deceased, and Morrell Keith Neville, the only heir at law, exhibited their bill to the Circuit Court of the District of Kansas against Eugene S. Quinton and Abram Bergen, and others setting out the ownership by the testator in his lifetime of land situated in Shawnee county, Kan., the complainant's relation to him as above stated, and the following facts: That the will had been duly probated in the county court of Lincoln county, Neb., where the testator resided at the time of his death; that Neville had "lately filed in the probate court of Shawnee county an authenticated copy of his appointment as administrator with the will annexed and caused the same to be recorded therein"; that debts amounting to $55,000 duly allowed against the estate remained unpaid; that the will empowered the executor as trustee and his successor, Neville, as administrator c. t. a., to sell the real estate of the testator for the purpose of settling the estate, and expressed a desire that such property as was located outside the state of Nebraska should be first sold for that purpose; that it was advisable in the opinion of the complainants and for the best interests of the estate that the land situated in Shawnee county should be sold to liquidate the remaining unpaid debts of the estate; that it was impossible to make such sale by reason of wrongful acts, claims, and pretensions of the defendants Quinton and Bergen, who, it was alleged, had performed certain legal services in litigation over the Kansas lands for the testator in his lifetime and had on March 14, 1893, entered into a written contract with him whereby it was agreed that, when the lands should be sold or disposed of, Quinton and Bergen should have for their professional services one-third of the net proceeds after deducting $60,-000 therefrom; that the contract contained the following clause: "No sale or disposition to be made without the consent of all parties to this agreement" —that defendants had claimed and publicly given out that no valid sale could be made of the land without their consent and for the purpose of preventing the administrator c. t. a. from selling and disposing of it the bill alleged as follows: That they, Quinton and Bergen, "had refused and still refuse although often requested by your orators to consent to any sale or disposition of the land by him [the administrator c. t. a.] and in further aid of such purpose the defendants or some one of them have lately caused to be placed on record in the office of the registry of deeds of Shawnee county, aforesaid, a copy of the said agreement purporting to be so acknowledged as to entitle it to record"; that the administrator c. t. a. was in the possession of the land holding the legal title to it for the purposes of the trusts created by the will; that his co-complainant, Morrell Keith Neville as heir at law, was the beneficial owner of the land excepting in so far as the same was vested in the administrator c. t. a. for the purposes of the trusts.

The bill alleged that the only interest which defendants Quinton and Bergen or any of the defendants claiming under them had in the land by virtue of their agreement with Keith in his lifetime was a claim or lien in the nature of an equitable mortgage to secure a debt due them from Keith, with the right to have the land sold for the purpose of fixing their compensation according to the terms of the agreement and for the purpose of making the lien available.

The prayers of the bill, among other things, were that the part of the agreement of 1893, which provided that the lands should not be sold or disposed of without the consent of Quinton and Bergen be declared inoperative as repugnant to the main purpose of the agreement and in restraint of alienation, that the land be sold in order to fix the claim or interest of Quinton and Bergen to it, and that complainants be allowed to redeem from the lien by paying to Quinton and Bergen the amount of their interest in it when so ascertained. There was also a prayer for general relief.

After an unsuccessful demurrer the defendants Mary K. Quinton and E. W. Poindexter, assigns of all the rights of Quinton and Bergen, answered, admit-

ting by failure to deny the allegations of the bill, complainants' right, title, and interest in the land in question under the testator's will as stated in the bill; averring some misconduct on the part of the administrator c. t. a. which it is conceived has little pertinency to the merits of the controversy, and is therefore not detailed here; averring that complainant, the administrator c. t. a., had ample money on hand to pay the debts of the estate without selling the Kansas land; that no offer to sell had ever been made to defendants, and that Quinton and Bergen or their assigns had never refused to join in a sale or disposition of the land; that the provision of the contract of 1893 to the effect that the land should not be sold except by their consent was inserted solely for the benefit of Quinton and Bergen "as protection for them in their contingent fee · * * * as protection to the said E. S. Quinton and Abram Bergen for a reasonable fee * * * so that they might have some way and power of protecting themselves against the sale of the property that would cut them off from any compensation for their services."

The general replication in equity was filed, and after the testimony was taken and the proofs closed complainants filed a motion to suppress certain depositions taken by defendants to show the actual value of the legal services referred to in the contract of 1893. The case was afterwards argued by counsel and submitted for a final decree, which was signed and handed down November 19, 1903. Simultaneously therewith the circuit court sustained the motion to suppress some of defendants' depositions.

The court specifically found in and by the final decree that the title and beneficial interest in the land was vested in complainants as stated in their bill, subject only to an equitable lien in favor of Quinton and Bergen or their assigns for compensation for their legal services; that the parties to the agreement of 1893 had been unable to agree upon a price at which the land could be sold or disposed of; that under the pleadings and facts established by the evidence the court had the power and ought to terminate the relations between the parties growing out of the agreement of 1893, and to adjudge and decree to them their separate and respective rights in the premises as nearly as practicable; that neither the testator in his lifetime nor the complainants as successors in interest to him had acted in bad faith or otherwise violated or refused to conform to the terms or intent of the agreement in failing or declining to sell or consent to a sale of the lands upon terms or conditions proposed or suggested by any other party in interest. The court then declared the rights of the parties, giving defendants an equitable lien upon the land for one-third of the net proceeds of its sale in excess of $60,000 according to the terms of the agreement, and appointed a master to invite and receive offers for the land for a period of over four months from any of the parties in interest or any other persons whom they might induce to make offers therefor and to report the same without delay to each of the parties interested for his or their acceptance or rejection, fixing an upset price, however, of $61,000 for the land. The court further ordered that, if any offer not less than $61,000 should be consented to by the parties, a sale should be made at that price, and the administrator c. t. a. should in the execution of his powers under the will of the testator convey the land to the purchaser. The decree further provided that, if no offer should be received or consented to on or before the time limited therefor, then the land should be advertised and sold for not less, however, than $61,000, and the proceeds of the sale should be brought into court for disposition and distribution to the parties according to their rights determined by the decree.

Subsequently, on May 18, 1904, the defendants Mary K. Quinton and E. W. Poindexter filed in the court which rendered the decree a bill of review to secure its reversal. That bill set out the original bill, demurrer, answer, replication, and final decree in extenso, and prayed that the latter be set aside because erroneous on the face of the record. Certain pleas and demurrers were filed which on hearing were sustained by the circuit court and the bill of review was dismissed. This appeal by the defendants in the original action challenges the correctness of the ruling resulting in the dismissal of the bill of review.

E. S. Quinton (G. C. Clemens and A. B. Quinton, on the brief), for appellants.

E. Wakeley (James A. Troutman and Robert Stone, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The function of a bill of review is to obtain a reversal of a decree by the court which rendered it either for error of law apparent on the record or to secure a rehearing of the facts, on a showing of newly discovered evidence. 2 Daniell's Ch. Pl. & Pr. (5th Ed.) p. 1576. When the bill is for the purpose first mentioned, consideration can be given to the record of the original cause only. The evidence at large cannot be examined or considered, and any facts averred in the bill of review inconsistent with the pleadings and decree in the main case can have no effect in determining its correctness. Whiting v. United States Bank, 13 Pet. 5, 10 L. Ed. 33; Buffington v. Harvey, 95 U. S. 99, 24 L. Ed. 381; Shelton v. Van Kleeck, 106 U. S. 532, 1 Sup. Ct. 491, 27 L. Ed. 269; Enochs v. Harrelson, 57 Miss. 465.

In view of the foregoing rule we must indulge the conclusive presumption that the proof, which is not before us in this proceeding, sustained the issue tendered by the bill, did not sustain any affirmative defense pleaded in the answer and justified the decree as rendered if it was warranted by and not inconsistent with the pleadings. For the purposes of this case, therefore, the title and beneficial ownership of the land in question were in the complainants.

Inasmuch as we are chiefly concerned with the consideration of the original case wherein the appellants or complainants in the bill of review were the defendants and the appellees or defendants in the bill of review were the complainants, we shall, to avoid confusion, usually refer to them in this opinion as they were known and designated originally and notwithstanding the fact that Quinton and Bergen the defendants in the original case have assigned their rights and interest under the contract of 1893 to the appellants herein, we shall for convenience frequently refer to Quinton and Bergen the original defendants as the owners of the right.

It is first contended by defendants that complainants in the original bill could not maintain the action, that a union of possession and title were necessary, and that such a union is not found in either of the complainants. Without conceding that in this action to quiet title and redeem from an equitable lien both possession and title in the complainants were indispensable, it is sufficient to say that the record discloses a union of both of them in complainant Neville. He was administrator c. t. a. by lawful appointment in Nebraska, the domicile of the testator. As such he was charged with the execution of the trusts conferred upon the executor named in the will. Sections 2983 and 2987, Comp. St. 1903 Neb. By the statutes of Kansas (section 3009, Gen. St. 1901) he was empowered as such foreign executor or administrator to sue and be sued in the latter state. By the provisions

of sections 7961 and 7966 (Gen. St. Kan. 1901) the recording of an authenticated copy of a foreign will relating to real estate in the probate court of any county where the real estate is situated operates to pass title to the real estate in like manner as is done by wills made conformably to the laws of the state.

Inasmuch as it is averred in the original bill that complainant Neville had filed an authenticated copy of his appointment as administrator with the will annexed, in the probate court of Shawnee county, and had caused the same to be recorded therein, or if the averment is ambiguous as to whether the will itself as distinguished from the appointment was filed and recorded, inasmuch as the will might have been so recorded, the finding by the circuit court that the legal and equitable title were vested in the complainants as stated in the bill conclusively established the fact for the purpose of this case that such will was so recorded or that some other equally effective step was taken to confer legal title upon Neville, who only according to the pleadings could hold the legal title under the will of the testator. He was also in possession as admitted by the pleadings. From the foregoing we think it clearly appears that Neville as administrator c. t. a. not only had a legal right to sue in Kansas, but that, as owner of the legal title and in possession of the land in controversy, he also had a cause of action suable in Kansas to protect such title and possession.

If the heir at law was not a necessary party his joinder was not prejudicial. No objection to the joinder was made below either by demurrer or answer and it was thereby waived. It appears that the holder and owner of the particular estate, who was a testamentary trustee in possession of the premises, and the remainderman, both united in a bill to remove a cloud from their title (which was asserted to be an obstacle in the way of the execution of the trust imposed upon the former) and to redeem from an equitable lien or charge against the land, which had been created by the testator in his lifetime in favor of Quinton and Bergen. Inasmuch as all the parties who had any interest in or claim against the land were before the court there was no defect of parties.

It cannot be claimed that the agreement of 1893 was in any technical sense a mortgage. It, in terms, conveyed no interest or estate to Quinton and Bergen. Nevertheless, it is claimed by complainants that as between the parties it created an equitable charge or lien against the land in favor of Quinton and Bergen to secure the payment of their attorney's fees, when fixed on the standard created by the agreement.

Defendants aver in their answer that the clause prohibiting the sale of the land without their consent was intended as a protection to them for the payment of their fees. Accordingly, we might reasonably assume that the agreement should be treated as in the nature of a mortgage. But, as the case depends upon a proper interpretation and understanding of the agreement, it requires critical consideration. It first fixes a standard for determining the amount of compensation to be paid Quinton and Bergen for their services, by providing that, when the land should be sold, Keith should pay to them one-third of the net proceeds of the sale in excess of $60,000 as their fee. Here

was manifested a clear purpose that the lands should be sold for the preliminary purpose of fixing the fee and for the ultimate purpose of paying it. In the absence of any limitation of time, the usual rule would prevail that it should be sold within a reasonable time. Then follows the clause, "No sale or disposition of the property to be made without the consent of all parties to this agreement." Here is found what defendants in their answer called their "protection," and what was doubtless intended to effectually subject the land to the payment of their debt. The great and controlling purpose of the agreement was therefore to recognize and secure the payment of a debt. These are the substantial purposes of a mortgage, and they necessarily import the right to sell the security to accomplish the intended purpose. But, according to the terms as employed in their strict literal meaning, the agreement absolutely prevented Keith from making a sale of his property, from fixing the amount of his liability to Quinton and Bergen, from paying the same or clearing his title from a liability therefor without the consent of both Quinton and Bergen. It likewise prevented Quinton and Bergen from securing a liquidation of the amount of their claim against Keith or enforcement of the payment thereof by subjecting the land to a sale, without the consent of Keith. So it appears that the literal meaning of the language of the clause in question is inconsistent with the controlling intent and purpose of the agreement. It subjects either party to the will of the other, and, literally speaking, to the caprice or arbitrary disposition of the other. It prevents any disposition of the land as a matter of right, for the purpose of the agreement.

Some recognized rules for construing contracts may properly be stated. Inconsistent clauses must be construed according to the subject-matter and the motive, and, when the intent is plain, it must prevail over the strictness of the letter. Bent v. Alexander, 15 Mo. App. 181, 190. A rigid adherence to the letter often leads to erroneous results and misinterprets the meaning of the parties. Reed v. Ins. Co., 95 U. S. 23, 30, 24 L. Ed. 348. A clause or a word in a contract irreconcilable with its nature or general design of the parties should be rejected. Buck v. Burk, 18 N. Y. 337. "The letter killeth but the spirit giveth life." If the letter of a clause in an agreement is absolutely repugnant to the controlling and particular purpose of the agreement, it may, if necessary, be rejected. 3 Wash. on Real Property, 628; Cutler v. Tufts, 3 Pick. 272; Flagg v. Eames, 40 Vt. 16, 94 Am. Dec. 363; Canal Co. v. Hewitt, 55 Wis. 96, 12 N. W. 382, 42 Am. Rep. 701; Wilcoxson v. Sprague, 51 Cal. 640. Applying the foregoing principles, we might conclude our inquiry by subordinating the letter of the clause to its spirit, decreeing it to create an equitable charge against the land and conferring upon the complainants the right of redemption. Pinch v. Anthony, 8 Allen, 536; Chase v. Peck, 21 N. Y. 581; McQuie v. Peay, 58 Mo. 56; Blackburn v. Tweedie, 60 Mo. 505; Daggett v. Rankin, 31 Cal. 322.

A bill for the double purpose of declaring a deed absolute on its face to be a mortgage and to redeem therefrom is a well-recognized remedy in equity. Cline v. Robbins, 112 Cal. 581, 44 Pac. 1023;

Hollingsworth v. Campbell, 28 Minn. 18, 8 N. W. 873; Morrow v. Jones, 41 Neb. 867, 60 N. W. 369; Ency. Pl. & Pr. p. 964, and cases cited. In analogy with the principle just stated, we think a court of equity may properly decree on one bill that the agreement of 1893 created an equitable lien and that complainants were entitled to redeem from it.

But we do not find it necessary under the peculiar facts of this case to base our conclusion solely on any technical rules of construction of contracts. Neither is it necessary to reject any words of the agreement in question in order to arrive at what was the intention of the parties. The record discloses that the parties had not for a period of 10 years reached any agreement concerning a sale of the land; that in the meantime the owner had died leaving the land subject to the payment of his debts; that without any bad faith on the part of the owner or his legal representatives they and Quinton and Bergen had been unable to agree upon a price at which the land could be sold; that the defendants were asserting and publishing that no sale or disposition of it could be made for any purpose without their consent; that they had for the purpose of making their pretensions effectual caused the supposed prohibitive agreement to be recorded in the office of the land records of Shawnee county where the land was situated.

We cannot admit the possibility that the parties to the agreement intended to tie up the sale of the land forever. That would be such a restraint upon alienation as would render the agreement inoperative and void in that respect. We cannot presume, if there is any other reasonable alternative, that the parties intended to make a void agreement or do a senseless or useless thing. A reasonable interpretation of the clause in question, one in harmony with the spirit and purpose of the contract, would seem to be that the parties intended that they should have a reasonable time only to reach a personal agreement, and that, if they failed to do so, the right of either to resort to the courts of the land for appropriate relief should not be abridged or interfered with. We think the facts disclosed by the record clearly demonstrate that a reasonable time for voluntary action had elapsed before the original action was instituted, and we are of opinion that the recording of the agreement and the assertion of the right under it to effectually veto any sale or disposition of the land constituted a cloud on complainants' title, a serious impediment to their right of redemption from the lien, and created such an embarrassment to their right of alienation and to their right of appropriating the proceeds of the sale in execution of the trusts created by the will as fully justified the institution of the suit by complainants without violating the fair and reasonable intendment of the agreement.

We have carefully considered the earnest contention of defendants that, if the provision of the contract of 1893 requiring consent of all its parties to a sale of the land is to be ignored, the entire agreement, including the clause fixing defendants' compensation at one-third of the net proceeds of the sale of the land over and above $60,000, should be declared null and void, the defendants, to be placed in statu quo, and restored to their rights of action on a quantum meruit to recover from Keith's estate the reasonable value of the services rendered, and

not remain bound by the contract to take one-third of the net proceeds of the sale of the land less $60,000. This contention, we think, involves the erroneous assumption that the original bill either sought to rescind the agreement of 1893 or to set aside or annul any of its provisions. We regard the bill to be essentially one to redeem from an equitable lien, involving a preliminary construction of the agreement creating the lien, a declaration of its true character and the removal of a cloud from complainants' title occasioned by the recording of the agreement and the pretensions of the defendants under it. The original bill was to affirm and enforce the agreement as made and as intended by the parties, and not to disaffirm or avoid it. Accordingly, there was no occasion for putting Quinton and Bergen in statu quo or for restoring to them any rights which they had contracted away by the agreement. By the agreement as fairly and reasonably interpreted in the decree they are securing their full rights as intended by the parties.

We are not able to perceive that the decree was made on an erroneous theory, as claimed by the defendants. It recognized the rights of complainants as owners of the land and the subjection of the land to an equitable charge in favor of the defendants as claimed by them. It recognized the embarrassment occasioned by the defendants recording the agreement and their conduct and claims under it, and necessarily found that all these things stood in the way of the execution of the trust vested in Neville by the last will and testament of the owner, and stood in the way of complainants enjoying the usual incidents of ownership of real estate. Such was the theory of the bill and the decree is in full harmony with it.

Neither, in our opinion, was the decree, as made, unjust or oppressive to the defendants. They were held bound by the contract made by their assignors as reasonably interpreted. They were given four months and more in which to prepare to protect themselves by bidding at the sale or otherwise securing full value for the land and thereby enhancing the value of their interest. We think the decree as rendered safeguarded and protected the interests of all parties concerned to the full extent which the facts of the case and the remedy to which the complainants were entitled permitted.

Some other propositions were asserted and argued by counsel and to all of them we have given diligent attention; but we find in them no reason for disturbing the conclusion already indicated. Finding no error apparent upon the record of the original case, the bill of review was properly dismissed by the trial court, and its action is accordingly affirmed.