QUINTON et al. v. NEVILLE et al.

(Circuit Court of Appeals, Eighth Circuit. June 8, 1907.)

No. 2,294.

1. COURTS—LAW OF THE CASE—PREVIOUS DECISIONS.

Where no appeal was taken from an original decree, and a bill of review was denied, all matters within the pleadings and jurisdiction of the court, expressed in the decree, were res judicata, and not reviewable on appeal from a supplemental decree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 340.]

2. EQUITY—JURISDICTION—RETENTION FOR COMPLETE RELIEF.

Where a federal court of equity acquired jurisdiction of a suit by an administrator with the will annexed, to determine a claim of lien on certain lands belonging to testator and declare the rights of the parties, the court having determined that the title to the land was in the administrator and that the defendants were entitled to a lien under a certain contract, it was not bound to remand the cause to the probate court for the enforcement of such lien by a sale of the land, but could retain jurisdiction until complete justice had been accomplished by a sale of the land and distribution of the proceeds between the administrator and the lienors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 103–114.]

3. JUDICIAL SALES—LIENS—FORECLOSURE—SALE OF LAND—DECREE—PLATTING OF LAND.

Gen. St. Kan. 1901, § 3012, provides that where it is made to appear by any executor or administrator that any lands of the estate, lying near an incorporated town or city would be materially advanced in value by being platted into town and city lots, the court may order the executor or administrator to subdivide and plat the land. Section 3013 requires the order directing such plat to be made on petition of the executor or administrator, to be accompanied by an accurate plat of the proposed subdivision; and section 3014 requires the executor or administrator, on receipt of the order, to acknowledge and file the plat as an addition to the city, and that no sale of any part of such real estate shall be ordered by the probate court until the plat has been acknowledged and filed. *Held*, that where an administrator with the will annexed sued to have an alleged lien of the defendants on property adjoining a city declared, and the land sold, it was a proper exercise of the court's discretion to refuse, without the consent of the administrator, to direct that the property be platted into a city subdivision, before sale, under such sections, and to require that the land be surveyed and subdivided into parcels containing not less than 5 nor more than 10 acres.

4. SAME—CONDITIONS—FORFEITURE.

Where a lien was imposed on the excess of the proceeds of a sale of land belonging to an administrator with the will annexed, over $60,000, the owners of the lien could not object to a provision in the sale decree requiring each bidder as evidence of good faith to deposit 20 per cent. of the amount of his accepted bid, to be forfeited and applied to the costs if the bid was not made good, the commissioner being authorized to ac-

cept the receipt of the administrator in lieu of cash in case he became the purchaser at the sale.

5. SAME—APPOINTMENT OF MASTER—CLERK OF COURT.

Where an order appointing a clerk of the Circuit Court of the United States special master to conduct a judicial sale of certain land under a decree of the Circuit Court did not specify special reasons therefor, the order was erroneous to that extent, under Act Cong. March 3, 1879, c. 183, 20 Stat. 415 [U. S. Comp. St. 1901, p. 591]. prohibiting the appointment of any clerk of a District or Circuit Court of the United States or their deputies as receiver or master in any case, except where the judge shall determine that a special reason exists therefor, to be assigned in the order of appointment.

6. SAME—AMENDMENT OF DECREE.

Such error did not affect the balance of the sale decree, which was amendable in that respect.

Appeal from the Circuit Court of the United States for the District of Kansas.

For former opinion, see 152 Fed. 879.

E. S. Quinton (A. B. Quinton, on the brief), for appellants.

E. Wakeley (Troutman & Stone, on the brief), for appellees.

Before SANBORN, Circuit Judge, and PHILIPS, District Judge.

PHILIPS, District Judge. The facts leading up to the appeal herein sufficiently appear from the statement in Quinton et al. v. Neville, Adm'r, et al. (C. C. A.) 152 Fed. 879, decided by this court at the December term, 1906, wherein these appellants sought by bill to have the original decree herein reviewed. Prior to that decision the Circuit Court had proceeded to enter a supplemental decree, in words and figures as follows:

"It appearing to the court that no sale of the tract of land involved in this cause has been or could be made at private sale as provided by the decree of this court of November 19, 1903, and that the parties are unable to agree upon a method of sale thereof, it is therefore now by the court here further ordered, adjudged, and decreed:

"Good cause existing therefor, George F. Sharitt, Esq., is hereby appointed special master to make the sale of the said land, to wit: The east half of the southeast quarter of section 25 in township 11 of range 15 east, and also a part of the east half of the northeast quarter of said section described as follows: Commencing at the southeast corner of said northeast quarter, then running northerly 13 rods, thence west at a right angle one quarter of a mile, thence south at a right angle 13 rods, thence east at a right angle to the place of beginning, all in Shawnee county in the state of Kansas—and to perform the other duties herein specially imposed upon him. He shall cause the land to be surveyed by a competent surveyor and so divided into parcels, each containing not less than 5 nor more than 10 acres, that a purchaser of any thereof may, if he so desires, advantageously plat the same with due regard to the neighboring streets and alleys of Topeka and Potwin. A map or plat of such survey and a sufficient description by metes and bounds of each numbered parcel shall be filed in this cause. The map shall show no streets or alleys upon the land to be sold nor subdivision of the parcels into blocks or lots, but it shall show the neighboring streets and alleys of Topeka and Potwin. The said special master shall forthwith cause the land to be advertised and sold in the same manner as in cases of sale of real estate upon execution, but without appraisement; and also excepting that he shall offer each and all of the parcels separately and also the tract of land as an entirety, and if the aggregate of the bids for the parcels shall

154 F.—28

exceed that for the tract as an entirety he shall accept them, otherwise he shall accept the bid for the entire tract; provided, however, that no sale whatever shall be made unless he shall receive for all of the land at least the sum of $61.000. The said special master may require from each bidder as an evidence of good faith the deposit of 20 per cent. of the amount of his accepted bid, the same to be forfeited and applied upon the costs of this cause if the bid be not made good; provided, however, that the master shall receive and accept the receipt of the complainant James Neville, as administrator, for any sum or sums not exceeding in the aggregate $60,000 in lieu of cash to that amount, and that within that amount no deposit as earnest money upon his bids shall be required of him. The advertisement for the sale of the land shall adequately describe the tract as an entirety and also each numbered parcel thereof, and shall contain the conditions of sale herein expressed, together with such others as may be appropriate under the law. The proper costs of the above-mentioned survey, map, and description and of making this sale shall be reported to the court and taxed among the costs of the cause. The master may adjourn the sale from time to time until his endeavor to sell the property has met with success or failure, giving notice thereof by public announcement at the time of adjournment. He shall forthwith report to the court his proceedings hereunder, and bring into court the proceeds of any sale that is made for its further order in the premises. Upon a sale of the land and confirmation by the court all of the parties to this cause and those claiming through them shall stand debarred of all estate therein or lien thereon except such as may be acquired by purchase at the sale; and in the event that no sale can be made in conformity herewith for a sum in excess of $61,000, then the defendants shall stand debarred of every estate in or lien upon said land.

"The cause is reserved for such other orders and decrees as may be necessary in the premises."

From this decree Mary K. Quinton and E. W. Poindexter, representing the original beneficiaries of the claim of Eugene S. Quinton and Abram Bergen, have appealed.

It is transparent from the assignment of errors that counsel for appellants are ingeniously seeking by this appeal to have reviewed what was found and adjudged by the original decree. As that decree was not appealed from, and the bill of review was denied, all matters within the original pleadings and within the competency of the court expressed in the decree are res adjudicata. The decision of this court on the bill of review necessarily recognized the jurisdiction of the Circuit Court to render the original decree. That decree established the title of the complainants therein to the land in question. It recognized and declared the equity of the defendants therein, the appellants here, to a charge on the lands for their compensation as provided in the original contract, and as a necessary means to the ascertainment of that compensation it directed a sale of the land.

The contention is made that the will under which the executor claims, which was executed and probated in the state of Nebraska, was not recorded in Shawnee county, Kan., where the land is situate; without which precedent act, it is asserted, the Circuit Court never acquired jurisdiction to make any decree in the cause. This objection was raised on the hearing of the bill of review. Judge Adams, who delivered the opinion of the court, after adverting to the fact that the record in the case disclosed a union of both possession and title in the complainants below, that as the administrator c. t. a., lawfully constituted in the state of Nebraska, the domicile of the testator, charged with the

execution of the trust, was empowered by the statute of Kansas to sue on the recording of the will in that jurisdiction, said:

"Inasmuch as it is averred in the original bill that complainant Neville had filed an authenticated copy of his appointment as administrator with the will annexed in the probate court of Shawnee county, and had caused the same to be recorded therein, or if the averment is ambiguous as to whether the will itself as distinguished from the appointment was filed and recorded, inasmuch as the will might have been so recorded, the finding by the Circuit Court that the legal and equitable title were vested in the complainants as stated in the bill conclusively established the fact for the purpose of this case that such will was so recorded, or that some other equally effective step was taken to confer legal title upon Neville, who only according to the pleadings could hold the legal title under the will of the testator. He was also in possession as admitted by the pleadings. From the foregoing we think it clearly appears that Neville as administrator c. t. a. not only had a legal right to sue in Kansas, but that, as owner of the legal title and in possession of the land in controversy, he also had a cause of action suable in Kansas to protect such title and possession."

It is now insisted that when the Circuit Court had found, as it did in the original decree, that the title to the land was in the complainants, and settled the construction of the contract between the testator, Morell C. Keith, and Quinton and Bergen, and further directed that as a means for the ascertainment of the amount of the charge on the land in favor of Quinton and Bergen the land should be sold, the full purposes of the court in taking jurisdiction of the controversy were subserved, and thereupon the matter should have been remitted to the jurisdiction of the probate court of Shawnee county, Kan., to proceed as in the case of estates in administration under probate. This suggestion cannot be entertained. "The court which first acquires jurisdiction of specific property in a suit or proceeding to enforce a lien upon it or to subject it to a sale in a case in which it may find it necessary or convenient to take possession of, or dominion over it, is entitled to retain that jurisdiction until the suit is at an end;" and, consequently, until a complete remedy is enforced. Brun v. Mann (C. C. A.) 151 Fed. 146, loc. cit. 152.

A court of equity does not administer justice by halves. "It is a rule of courts of equity to do complete justice when that is practicable, not merely by declaring the right, but by affording a remedy for its enjoyment. A court of equity does not turn a party to another forum to enforce a right which it has itself established." 2 Bates on Federal Equity Procedure, § 724, p. 773. Having rightly assumed jurisdiction of the controversy between these parties, in order to adjust the lien claimed by appellants on the land, and having determined that, in order to work out that lien and render available the estate therein of the administrator c. t. a. and the heir, it was necessary to sell the land, it inheres in the powers of a court of equity to prescribe not only the manner of conducting, but also to supervise such sale. This is essential to enable the court to see to it that its ministerial officer, charged with the execution of the decree, shall proceed in conformity therewith; a duty which the chancellor would fall short of performing should he remit the carrying out of his decree to a foreign tribunal over which he has no control. The sole purpose of recording the will in Shawnee county, Kan., was to enable the administrator c. t. a. to dispose of the

land to meet the debts of the estate in the domicile of the testator; and in order thereto it became necessary to remove the obstruction and cloud on the title of the asserted lien of the appellants. No question is presented on this record respecting the rights of local creditors in the state of Kansas.

The important question to be answered on this appeal is, was the supplemental decree a proper one? By the original decree one Bolmer was appointed special master, with directions to invite and receive offers from proposed purchasers for the land until April 1, 1904, and to report such offers to the court for its acceptance or rejection. The decree fixed the minimum price at $61,000. If any offer not less than that sum should be consented to by all the parties, the sale should be made. Should no such offer be made and consented to by April 1, 1904, the decree provided that "then the said land shall be advertised and sold, under such conditions and regulations as the court may hereafter prescribe, but not at a less sum than $61,000." There having been no sale up to April 1, 1904, the Circuit Court made the supplemental order, as it was authorized by the original decree to do. Various complaints are made by the appellants touching the provisions of this supplemental decree; chief of which is, the court should have directed that the master should first cause the whole 80-acre tract of land to be surveyed, laid off into blocks and lots, streets and alleys, and a plat thereof filed as an addition to the city of Topeka, within the corporate limits of which the land is situate. This, counsel contends, is the course pointed out by the statute of the state of Kansas when and where an executor or administrator proceeds under the probate laws. The statute of Kansas (Gen. St. 1901) pertaining to executors and administrators, provides as follows:

"Sec. 3012. Where it may be made to appear to the probate court of any county in this state by any executor or administrator that any lands of the estate represented by such executor or administrator, lying in or sufficiently near some incorporated town or city to be made an addition thereto, would be materially advanced in value by being subdivided and platted into town or city lots, the said court may issue an order to such executor or administrator to subdivide and plat such land.

"Sec. 3013. Before any order shall be issued by the probate court as provided for in the preceding section, a petition for that purpose shall be filed in such court by such executor or administrator, which petition shall be accompanied by an accurate plat of such proposed subdivision, showing the lots duly numbered, and the streets, alleys and other public grounds, and the respective dimensions of each; and the defendants made to such petition, and the notices to such defendants, and all other proceedings thereon to the procuring of such order, shall be in substantial conformity with the rules of procedure in such court in cases pertaining to the disposal of real estate of deceased persons.

"Sec. 3014. Upon the receipt of such order the executor or administrator shall immediately proceed to acknowledge such plat and file the same for record as an addition to such incorporated town or city for the benefit of such estate, in substantial conformity with the provisions of the act entitled 'An act concerning the plats of cities and towns,' and with like effect as in cases of plats filed by other proprietors: Provided, that no sale of any part of such real estate shall be ordered by the probate court until such plat be acknowledged (and) is filed as herein required."

The statute (sections 4359, 4360, and 4364, c. 78, Gen. St. Kan. 1901) provides that, whenever any addition to any city or town shall be laid

out, the proprietor or proprietors of such city or town or addition shall cause to be made out a map or plat thereof, particularly describing the ground reserved for public purposes, and that all the lots intended for sale shall be described by numbers, and their precise length and width. Such map or plat shall be acknowledged by the proprietor; and it then declares that such maps or plats, so acknowledged and certified and recorded with the register, shall be a sufficient conveyance to vest the fee of such parcels of land named or intended for public uses in the county in which such city or town is situate, in trust for the uses therein named, etc. The Supreme Court of Kansas holds that, "before a plat of an addition to a city will operate as a grant of the land to the public for use as a street, it must have been acknowledged and recorded by the owner of the land." Brooks v. City of Topeka, 34 Kan., loc. cit. 280, 8 Pac. 393. Therefore, to make the platting of this 80 acres of land into lots and blocks, with streets and alleys, conformable to the statute, the plat would have to be executed and acknowledged by the administrator c. t. a.

It is observable under the statute above quoted that whether or not the probate court could proceed to direct this property to be platted into blocks, lots, etc., would depend upon the initiative of the administrator or executor. The authority of the probate court is conditioned upon the petition of the executor or administrator. And it must be made to appear to the probate court by the executor or administrator that the lands are so allied or near to the incorporated town or city as to be materially advanced in value by being subdivided into blocks, lots, etc. The probate court could not, sua sponte, make such order, for the statute expressly declares that "before any order shall be issued by the probate court * * * a petition for that purpose shall be filed in such court by such executor or administrator." The appellants are asking the United States court to do what the probate court itself could not do if this cause were within its jurisdiction.

Has the United States court, acquiring jurisdiction over this administrator, coming into it solely for the purpose indicated by the bill of complaint, to have an obstruction removed to enable him to sell a body of 80 acres of land subject to the lien of the appellants thereon for any excess over a specified sum, the power to impose upon the relief to which it has found the appellees entitled the condition and burden that he shall plat the land into blocks, lots, streets, and alleys, and execute and file the same so as to dedicate such streets to the city of Topeka? No precedent has been cited for the exertion of such power by a court of equity, especially where the proprietor of the land, as in this case, is not consenting thereto. The exercise of such extraordinary jurisdiction by the federal court, if not arbitrary, would be of such questionable right and propriety that it should not seek for an occasion to invoke it. In any event, its exercise would rest in the sound discretion of the chancellor. The Circuit Court, to whom the manner of dividing this property was addressed, after hearing the suggestions and objections of the parties in interest, declined to accede to the appellants' suggestions. The decree he made expressed his best judgment. Was his discretion so abused as to invite the interference therewith of this court? The court was held in the city where this

property is located; the judge heard the affidavits and counsel respecting the manner in which the sale should be conducted. Is the Court of Appeals in any better situation to exercise a wise judgment in this matter than the Circuit Judge? His judgment was that it was not for the best interests of the parties concerned to have this property platted into blocks, lots, streets, and alleys, and to have such plat acknowledged and filed in the recorder's office, thereby dedicating the streets and alleys to the public use, with all the incidents and burdens that might attach to such dedication. He deemed it wiser to divide the land into tracts of not less than 5 nor more than 10 acres, and to offer it for sale in such subdivisions; his thought being that investors would more likely buy in such subdivisions than otherwise. This it seems to us to be reasonable and practical, as the purchaser would thus be left at liberty either to retain his investment in the present shape, at his pleasure, so that, if at any time he should conclude that it were better to plat the land under the local statute, he could do so in such manner as in his judgment would be most profitable to make a sale of the land whenever he saw fit to sell.

There is an important provision of the decree, well to be noted. It provides for the sale of the divisional parcels separately, and at the conclusion thereof the master shall put the whole tract up and offer it in bulk, with directions to accept the bid or bids which produce the larger sum of money. This is the customary method of conducting such sales in equity, as experience has demonstrated that it is attended with the best results. How could this method be pursued if the court were to divide up this property into blocks, lots, streets, and alleys for city purposes? In order to sell the lots at public outcry it should be expected that there would be a purchaser for each lot at the sale—an occurrence not reasonably to be anticipated. Purchasers of such lots, if desired for homes, could hardly be expected to be found for each one of the lots at an auction sale. Common experience attests the fact that such purchasers are rarely prepared to pay cash in hand, but more usually buy them on the installment plan. If it could be expected that persons would buy the lots in detail, or even in bulk, for speculative purposes, is it reasonable for the court to assume, in reviewing the manner adopted by the Circuit Court, that such speculative purchaser would pay more for the lots in bulk than he would pay for five-acre tracts or more, with the privilege reserved to himself of platting the lands at his own pleasure? These are purely matters of administrative discretion and business judgment, which the chancellor on the ground should be assumed to have as wisely exercised as this court might without the opportunity of viewing the property.

There is another consideration in favor of the method adopted by the Circuit Court. The long delay consequent upon this litigation provoked by appellants, demands that there should be an end to this controversy. It is essential to the winding up of the administration of this estate that this delay should not be further protracted. If this property were platted in conformity with the statute of Kansas, and offered for sale in detail, the probability is that the most desirable lots would find a bidder, and many less desirable ones would have no bidders or little competition. Before the property could be put up and

sold in bulk, there would have to be a sale of the lots in detail, to enable the master to determine whether it were best for the interests of the parties to accept the aggregate of the sales in detail or the sale in bulk. It would probably result in repeated advertisements and offerings for sale, thus protracting the closing up of this controversy to an intolerable extent. We are of opinion that the sale of this property under the plan adopted by the Circuit Court would probably produce better results than any which occurs to us.

It is urged against the assumption of jurisdiction by the Circuit Court to make sale of the land that it is incompetent to make any distribution of the proceeds, as that is intrusted by the law to the functions of a court of probate. The answer to this is that, having jurisdiction to fix and enforce the charge, in the nature of a lien upon the land, in favor of these appellants, any fund arising from the sale applicable to such lien would certainly, proprio vigore of the decree, be paid over on order of the court to the appellants. As such claim is a fixed lien on the fund in excess of the $60,000, first to be paid to the appellees, in no sense would it constitute an asset of the decedent's estate, to be marshaled and distributed under probate. When these appellants shall have received under the order of court their ascertained fee, they will neither have nor feel any concern respecting the distribution of the $60,000, or more, going to the administrator. When the administrator shall have received the fund arising from the sale, it will come to him officii virtute, to be accounted for by him to the proper probate court for administration.

Complaint is made of that provision of the decree which authorizes the master to "require from each bidder, as an evidence of good faith, the deposit of twenty per cent. of the amount of his accepted bid, the same to be forfeited and applied upon the costs of this cause if the bid be not made good." It is contended (1) that the court had no power to exact such forfeiture, and (2) that the decree makes no provision for any disposition or application of any fund so arising. Immemorially it has been the practice in courts of equity to require all bidders at judicial sales under decree of property of large value a qualifying deposit as an earnest of good faith on the part of the bidder. This is to prevent mere by-bidding, as well as bids by irresponsible parties, who, after the property is "knocked down" to them, disappear without making payment, thereby possibly making the sale a miscarriage, necessitating its postponement and readvertisement and the risk of securing a better bid than the genuine preceding bid of such impostor. The sum so forfeited, the decree declares, shall be applied "upon the costs of this cause if the bid be not made good." We are not called upon here to say what disposition would be made of any surplus, if any, after the satisfaction of the costs arising in the cause, as this might be merely academic. As this provision of the decree is as much for the protection and benefit of appellants as the appellees, it is not apparent why either should complain of it.

It is further suggested that the imposition of such forfeiture might deter purchasers from bidding, and thereby possibly enable the complainants below to become the purchaser "at their own price, and on their own terms, to the deprivation of said Mary K. Quinton and E.

W. Poindexter of all right and compensation whatever." A sufficient answer to this is that the appellees cannot bid in the property for less than $61,000, and before appellants could become interested in the result there must be an excess over the minimum sum; and the opportunity to bid is as open to them as to the appellees. If any advantage exists in favor of the administrator in respect of his privilege, to be credited on his bid of $60,000 (to go to him in any event), it is because this inheres in the nature of the original contract between the parties. The court is enforcing the contract as interpreted and declared in the original decree, and not to meet the necessities of appellants' situation as that may happen to be at the time of the sale.

Error is assigned of the action of the court in designating Mr. Sharitt, clerk of the court, as special master to superintend and conduct the sale of this property. The act of Congress approved March 3, 1879 (20 Stat. c. 183, p. 415 [U. S. Comp. St. 1901, p. 591]), provides that:

"No clerk of the District or Circuit Courts of the United States, or their deputies shall be appointed a receiver or a master in any case except where the judge of said court shall determine that special reasons exist therefor, to be assigned in the order of appointment."

The recitation in the record in this respect is as follows:

"Good cause existing therefor, George F. Sharitt, Esq., is hereby appointed special master to make sale of the said land."

The foregoing act of Congress was passed for a purpose. It was intended to prevent abuses which it was assumed had arisen out of favoritism for such officers of the court. It nevertheless recognized and contemplated that special reasons might exist in the particular case or instance for departing from the interdiction of the statute; but as a safeguard that the spirit as well as the letter of the statute should be observed, while reposing a discretion in the judge of the court in making such appointment, it requires that he should assign in the order of appointment the special reasons inducing such selection. While we are well satisfied that there was good cause existing which induced the learned Circuit Judge to select Mr. Sharitt as special master, the special reason is not assigned of record. It is highly probable, from the court's knowledge of Mr. Sharitt, that by reason of his intelligence, information of the property, and good business judgment his selection was well justified.

This error, however, does not invalidate or affect the balance of the decree. It was a mere failure to assign the good cause or reason on the record. The decree is clearly amendable in this respect. The supplemental decree of the Circuit Court is affirmed, in all respects, save in the matter of not assigning the special reason on the record for the designation of Mr. Sharitt as special master; and the cause is remanded to the Circuit Court with leave to so amend the order, otherwise to designate another master. As the appellants did not at the time call the Circuit Court's attention to the defect in the form of the order designating said special master so that such defect might have been then corrected, the costs of this appeal will be taxed in the proportion of three-fourths against the appellants and one-fourth against the appellees.