**Donald H. JACOBS, doing business as The Jacobs Instrument Company, Appellant and Cross-Appellee,**

v.

**UNITED STATES of America, Appellee and Cross-Appellant.**

No. 7230.

United States Court of Appeals Fourth Circuit.

Argued Nov. 13, 1956.

Decided Dec. 22, 1956.

Writ of Certiorari Denied March 25, 1957.

See 77 S.Ct. 666.

Donald H. Jacobs, pro se.

Bernard Cedarbaum, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Walter E. Black, Jr., U. S. Atty., Baltimore, Md. and Samuel D. Slade, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and HOFFMAN, District Judge.

PER CURIAM.

These are cross appeals in an action instituted by the United States against a government contractor. The contract, which was entered into in April 1949, was a research and development contract for the development of a bombing system, and pursuant to its terms the government placed property in the possession of the contractor and made payments to him in excess of $700,000. The contract provided that the government might terminate it at any time; and it was terminated under this provision in June 1953, although certain costs allowable under the contract continued for a while thereafter.[1] When the contractor

---

1. The pertinent provision of the contract is as follows:

"Article 23: (a) *Notice of Termination of Contractor's Right to Proceed.* The performance of work under this contract may be terminated by the Government in whole, or from time to time in part, whenever for any reason the Contracting Officer shall determine any such termination is for the best interests of the Government. Termination of work hereunder shall be effected by delivery to the Contractor of a Notice of Termination specifying the extent to which performance of work under the contract shall be terminated and the date upon which such termination shall become effective.

\* \* \* \* \*

"(d) In the event of the failure of the Contractor and Contracting Officer to agree as provided in paragraph (c) upon the whole amount to be paid to the Contractor in connection with the termination of work pursuant to this Article, the Government, but without duplication of any amounts agreed upon in accordance with paragraph (c), shall pay to the Contractor the following amounts:

"(1) All costs and expenses reimbursable in accordance with this contract, not previously paid to the Contractor for the

refused to turn over to the United States certain property and records and drawings made in the course of the work done, this suit was instituted to require him to turn them over. He filed answer denying the right of the United States to the records and drawings in question and asserting counterclaims under the contract aggregating $59,089.94. After extended hearings, the District Judge entered a decree directing him to turn over certain tangible physical property and to permit the government to make copies and micro-film records of the records and drawings made in the course of the work under the contract, but imposed as a condition of this relief that the government pay him the sum of $20,072.91 on account of the matters involved in the counterclaims. Both sides have appealed.

■■■ We think that the decree was proper and should be affirmed. The contractor makes lengthy contentions to the effect that the action of the officer of the government in terminating the contract was not taken in good faith but for the purpose of aiding other persons and corporations who desired to profit by what the contractor had done. The trial judge went fully into this matter and found that the action terminating the contract was taken in good faith and for proper reasons; and we are bound by this finding, as we would not be justified on the record in holding it to be clearly erroneous. Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. The government had the right to terminate the contract at any time that the contracting officer deemed this in the interest of the government, and as pointed out by the trial

judge, the government, upon its termination, was entitled to the benefit of all knowledge which had been acquired in the progress of the work.[2] Furthermore, it is clear that, without regard to the contract, the government is entitled to the benefit of all knowledge gained by the contractor in the course of the research for which the government was paying him. See Houghton v. United States, 4 Cir., 23 F.2d 386, and cases there cited. In this connection, it should be noted that the patent rights of the contractor and his rights in non-patentable "subject inventions" including "methods of construction, processes of manufacture, construction techniques, trade secrets and other know-how" were protected by the decree, with a provision that any dispute arising with regard thereto would be settled by the court after hearing.

■■■ In imposing as a condition of the decree that the government pay to the contractor the sum of $20,072.91, being the amounts found by the court to be due the contractor under the contract and for guarding for the government the secrecy of the records and drawings, the court was merely applying the well settled principle that he who seeks equity must do equity, a principle binding upon the government, as well as upon individuals. United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 26 S.Ct. 282, 50 L.Ed. 499; Lacy v. United States, 5 Cir., 216 F.2d 223. We quite agree that the fact that the court is granting relief to the government does not authorize it to entertain counterclaims which amount to suits which Congress has not author-

---

performance of this contract prior to the effective date of the Notice of Termination and such of these costs as may continue for a reasonable time thereafter with the approval of or as directed by the Contracting Officer (which approval shall not be unreasonably withheld) provided, however, that the Contractor shall proceed as rapidly as practicable to discontinue such costs. * * *."

2. Article 23(b) (6) of the contract provides:

"After receipt of Notice of Termination and except as otherwise directed by the Contracting Officer, the Contractor shall transfer title (to the extent that title has not already been transferred) and deliver to the Government in the manner and to the extent and at the times directed by the Contracting Officer * * * (ii) the plans, drawings, information and other property which, if the contract had been completed, would be required to be furnished to the Government."

ized. United States v. Shaw, 309 U.S. 495, 502, 60 S.Ct. 659, 84 L.Ed. 888. This, however, is a very different thing from conditioning the granting of equitable relief upon the doing of justice with respect to the subject matter of the relief granted. Here the court was directing the contractor to permit the copying of records and drawings which had been made by him under the contract with the government. The order was made in enforcement of the provisions of the contract and it was but fair and equitable that the government be required to pay the balance due under the contract when granted such relief. Certainly, one who asks specific performance of a contract should be required as a condition thereof to pay to his adversary the amount due him under the contract. Very much in point is the case of Lacy v. United States, supra, where the court conditioned the granting of an injunction asked by the government upon its paying compensation for property or instituting proceedings for its condemnation. In that case Judge Rives, speaking for the court, said [216 F.2d 225]:

> "The Government when applying for relief in a court of equity is as much bound to do equity as is a private litigant. United States v. Belt, D.C., 47 F.Supp. 239, vacated 319 U.S. 521, 63 S.Ct. 1278, 87 L.Ed. 1559, affirmed 79 U.S.App.D.C. 87, 142 F.2d 761; United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 338, 26 S.Ct. 282, 50 L.Ed. 499; Daniell v. Sherrill, Fla., 48 So.2d 736, 737, 23 L.R.A.2d 1410. 'When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter.' United States v. The Thekla, 266 U.S. 328, 339, 340, 45 S.Ct. 112, 113, 69 L.Ed. 313. It is true that that principle cannot be pressed

to the extent of waiving the sovereign immunity to suit by way of counterclaim. United States v. Shaw, 309 U.S. 495, 502, 60 S.Ct. 659, 84 L.Ed. 888; In re Greenstreet, Inc., 7 Cir., 209 F.2d 660, 666; Oyster Shell Products Corp. v. United States, 5 Cir., 197 F.2d 1022. The Government, however, is still bound to do equity and, as a condition precedent to relief in this case, either to agree upon and pay to the property owner such compensation as it may owe him, or, failing such agreement, to file the necessary proceedings for the ascertainment of such compensation."

■ The government relies upon the disputes clause of the contract, which provides that disputes as to allowable costs shall be decided by the Chief of the Bureau of Supplies and Accounts and that in the meantime the contractor shall diligently proceed with performance. It is clear, however, that this clause had no application to the case here, where the contract had been terminated, where the government was seeking the aid of the court to get copies of records and drawings and where it was necessary, in the interest of justice, that payment of the amount justly due the contractor be made a condition of the relief granted. See E. I. Du Pont De Nemours & Co. v. Lyles & Lang Construction Co., 4 Cir., 219 F.2d 328, 333–334.

■ The government complains of a provision of the order which made its right to appeal dependent upon paying into court the amount found to be due the contractor. It was error, we think, to place any such limitation upon the right of appeal; but no harm has been done here, as the appeal has been taken and full consideration has been given to it.

Affirmed.