UNITED STATES of America
v.
Donald H. JACOBS, doing business as Jacobs Instrument Company.

Civ. No. 7459.

United States District Court
D. Maryland.

Nov. 6, 1959.

Supplemental Opinion Sept. 29, 1960.

See also D.C., 155 F.Supp. 753.

Leon H. A. Pierson, U. S. Atty., Baltimore, Md., for the United States.

Donald H. Jacobs, pro se.

James H. McGlothlin, Washington, D. C., for Covington & Burling, and Piper & Marbury.

THOMSEN, Chief Judge.

Covington & Burling, of Washington, D. C., and Piper & Marbury, of Baltimore, Md., the attorneys who represented Jacobs through most of the trial of this action, have asserted liens for attorneys' fees and expenses against a check for $20,072.91, payable to the order of Jacobs, which is now in the possession, custody and control of this court. The check represents the proceeds of the judgment which Jacobs recovered on a counterclaim against the United States.

Jacobs had entered into a research and development contract with the Bureau of Ordnance of the Department of the Navy, pursuant to which the government had delivered certain tangible property to him and he had prepared and developed certain drawings, engineering notebooks, and design studies. The government terminated the contract and contended that all such documents were its property, but Jacobs refused to turn them over and this suit was instituted to require him to deliver them to the government. A show cause order was served on Jacobs, who retained Covington & Burling as his counsel. They engaged Piper & Marbury to act with them. No arrangement with respect to fee was made. The immediate problem was to prevent an absolute turn-over order being entered forthwith; this was accomplished, and Jacobs filed an answer and counterclaims. Shortly thereafter he paid to Covington & Burling $1,935 (plus $141.02 for expenses) and to Piper & Marbury $175 for services rendered up to that time.

Additional counterclaims were filed and counsel prepared the case for trial. Difficult questions of fact and law required many prolonged conferences with Jacobs and others and a great deal of legal research. The case came on for trial in November, 1955; the hearings occupied seven days over a period of two weeks. James C. McKay, then an associate and now a partner of Covington & Burling, together with another associate of that firm, represented Jacobs. Toward the end of the trial, Jacobs disagreed with his counsel over a question of strategy—whether one of the counterclaims should be pressed—and reluctantly accepted their advice not to press it. At the conclusion of the evidence and argument of counsel, the court delivered an oral opinion, finding that the documents were not the property of the United States but were the property of Jacobs. However, the court ruled that

under the general prayer for relief the government was entitled to copy the various documents which had been prepared by Jacobs in connection with his activities under Contract NOrd 10531. The court also found that Jacobs was entitled to recover from the United States $20,072.91 on two of his counterclaims. Applying the principle that he who seeks equity must do equity, the court conditioned the government's relief upon its paying Jacobs $20,072.91.

Jacobs promptly repented his acquiescence in his counsel's advice not to press all of his counterclaims, and a day or two after the trial asked and was granted permission by the court to press the abandoned counterclaims in proper person. He did so, without avail. On appeal by both sides, the decree was affirmed. Jacobs v. United States, 4 Cir., 239 F.2d 459, certiorari denied 353 U.S. 904, 77 S.Ct. 666, 1 L.Ed.2d 666.

The controversy between Jacobs and the government continued. Since he was still unwilling to sign a release, this court directed that the government deliver to the clerk of this court a check for $20,072.91, payable to Jacobs, to be held by the clerk subject to the further order of the court. Jacobs refused to accept the check, contending that the court should require the government to pay him an additional sum of $1,904.62, the amount of a judgment recovered against him in a state court on July 31, 1957, by the Comptroller of the Treasury, State of Maryland, representing sales and use taxes on property purchased by Jacobs and used by him in connection with the government contract. See Jacobs v. Tawes, D.C., 151 F.Supp. 770, affirmed 4 Cir., 250 F.2d 611; Jacobs Instrument Co. v. Comptroller, 216 Md. 290, 140 A.2d 285. In February, 1958, the Fourth Circuit granted leave to Jacobs to move to reopen his case in this court for the purpose of having adjudicated the liability of the United States for the use and sales taxes in controversy. Jacobs v. United States, 252 F.2d 296. The state court proceeding was terminated in April, 1958, but Jacobs has taken no further action in this court.

Meanwhile, in the fall of 1956, Covington & Burling and Piper & Marbury filed herein papers entitled "Assertion of Lien on Judgment". Jacobs conferred and corresponded with me about those claims, but has made no formal reply thereto. Nor has he replied to notices of hearing sent him by the clerk of this court and letters which I have written him during the past ten months. After due notice to Jacobs, a hearing was held on December 18, 1958, on the lien claims of his former counsel. Following that hearing, I wrote another letter to Jacobs giving him an opportunity to appear and be heard, but although the letter was delivered, I heard nothing further from him and proceeded with the hearing. Since the hearing I have communicated with Jacobs again and have received a long letter from him stating his position.

On January 2, 1959, the State of Maryland asserted a lien on the monies paid into this court by the United States. The alleged lien is in the amount of $1,504.04, and represents the balance due on the judgment for sales and use taxes. Jacobs has filed no reply to this paper.

The fund on which Covington & Burling and Piper & Marbury claim a lien and out of which they pray the court to make them an allowance is now in the custody and control of this court, and was created as a direct result of their efforts on behalf of Jacobs in this equity proceeding. It does not appear that Jacobs has any other assets out of which counsel might be able to collect a fee. His discharge of his counsel after they had established his counterclaim prevented the delivery of the check to them, as is the practice in this court and elsewhere in Maryland, and so prevented his counsel from obtaining a possessory lien on the check. There are, therefore, strong equities in favor of allowing a fee out of the fund, if this court has authority to do so.

The contract between Jacobs and Covington & Burling was made in the

District of Columbia, to be performed partly there, partly in Maryland, but principally in this court, in this equitable action, where jurisdiction is based upon the fact that the United States is the plaintiff. Under those circumstances, federal equity principles should be applied.

In Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 779, 83 L.Ed. 1184, a litigant had established a lien on earmarked funds in an insolvent bank, and by so doing had incidentally, through the principle of stare decisis, established like rights for other depositors, not parties to the suit. She sought an allowance of counsel fees and expenses out of the fund. Discussing the power of federal courts in equity suits to allow counsel fees and other expenses, Mr. Justice Frankfurter said: "Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts. The suits 'in equity' of which these courts were given 'cognizance' ever since the First Judiciary Act, 1 Stat. 73, constituted that body of remedies, procedures and practices which theretofore had been evolved in the English Court of Chancery, subject, of course, to modifications by Congress, e. g., Michaelson v. United States, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162."

In United States v. Equitable Trust Company, 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379, the Supreme Court allowed a fee to the attorney for the next friend of an incompetent Indian for services rendered in recovering from an adventuress and others a trust fund of which the Indian was the sole beneficiary. The court stated that it is a general rule in courts of equity that a trust fund which has been so recovered or preserved may be charged with the costs and expenses, including reasonable attorney's fees, incurred in that behalf. 283 U.S. at page 744, 51 S.Ct. at page 641.

In United States v. Anglin & Stevenson, 10 Cir., 145 F.2d 622, 624, the court said: "The allowance of the fees to be paid out of the inherited funds recovered as the distributive shares of the Indian clients, is based upon the rule that where an attorney recovers a fund for the benefit of his client and others, those benefited thereby become obligated to pay the cost of the recovery and preservation of the fund, including a reasonable 'between solicitor and client fee.' The rule springs directly from the 'authority of the chancellor to do equity in a particular situation,' Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 780, 83 L.Ed. 1184, and has been applied under variant circumstances wherever right and justice require it. (Citing cases.)"

The rule is not limited to situations where the recovery is for the benefit of a number of people, but has been applied to funds recovered for the benefit of the client alone. E. g. United States v. Equitable Trust Company, supra; Arenas v. Preston, 9 Cir., 181 F.2d 62; Bray v. Staples, 4 Cir., 180 F. 321.

In Wessinger v. Sturkie, 4 Cir., 77 F. 2d 751, at pages 752, 753, the court said: "That under certain circumstances attorneys, who are officers of the court, will be protected by the court in the collection of their fees is not to be doubted. This is ordinarily done on the theory that attorneys have a lien upon any fund in the hands of the court or being administered by the court or that has been brought into the court by their efforts, for the value of the services rendered." However, the court found: "The attorneys were in no sense parties or quasi parties to the suit; they had no fee dependent upon their clients' success in setting up their rights to the pledged securities; they brought no fund into the court, nor were their services exerted on behalf of any one other than their clients; they simply defended the right of their clients to the security (a right contested by other parties); they had no lien for their fees, statutory or implied; and the court below was administering no fund, nor was it ordering any payment from any fund, * * *." The opinion of the court concluded: "A study of the authorities cited on behalf of the appellees shows that, without exception, the cases in which it

was held that the court had authority to make allowances to attorneys were all cases in which the attorneys had recovered a judgment for their clients, had brought some fund into the court for the benefit of their clients and others, or cases in which the court was administering a fund properly chargeable with the payment of the fee allowed. It is not the duty of the court, nor does it have the power, to fix the fee of an attorney defending the client's title to property already in the client's possession. Courts cannot, in a suit in equity, summarily settle a controversy of this character between a lawyer and his client."

In Bray v. Staples, supra, the Fourth Circuit allowed the claim of an attorney for the payment of his fee out of a fund created by his efforts for the benefit of a single client, where a portion of the fund was being held under the custody and control of the court. The only important distinction between Bray and the instant case is that in Bray there was an agreement that the lawyer was to receive his fee out of the fund. Although there is no such express agreement in the instant case, I find that there was an implied agreement to that effect; it was the only way in which any substantial fee could have been paid. The majority opinion in Bray stated: "That the court had the custody and control of the fund acquired in this suit is admitted. Having thus acquired the custody of the same, it necessarily follows that it had jurisdiction to determine when it should be disbursed and to whom it properly belonged." 180 F. at page 328. The dissenting judge said: "Strictly speaking, no attorney's lien attaches to any fund which is within the custody or control of the court; but it is the court's right to award attorney's fees out of the fund. But this power to award fees is impersonal, acting on the res alone, so, where the res is beyond the control of the court, the attorney must seek some other remedy." 180 F. at page 331.

Most jurisdictions recognize the right of an attorney to a charging lien under facts like those in the instant case. 5

Am.Jur. (Atty & Client, sec. 219 et seq.) 392 et seq.; 7 C.J.S. Attorney and Client § 211 et seq., p. 1144 et seq. In United States v. Hudson, D.C.D.Mont., 39 F.Supp. 797, 801, the court said: "While the charging lien is generally recognized, many courts and law writers hold that it is not a lien at all; that there is no such thing as a lien upon a thing not in possession. The so-called special or charging lien of the attorney is sometimes said to be merely a claim to the equitable interference of the court to have the judgment or settlement or fund held as security for the debt. Jones on Liens, 3rd ed., 155 et seq.; Goodrich v. McDonald, 112 N.Y. 157, 19 N.E. 649; Prichard v. Fulmer, 2 N.M. 134, 159 P. 39, 2 A.L.R. 474; 6 C.J. 767, note 85; 7 C.J.S. Attorney and Client § 211."

In United States v. 72.71 Acres of Land, D.C.D.Md., 167 F.Supp. 512, 514, Judge Chesnut considered (1) the claim of an attorney who had represented a defendant at the trial of a condemnation case, and (2) the claim of another attorney who had unsuccessfully argued a motion for a new trial, to be paid out of the condemnation award. Judge Chesnut denied the claims, and noted: "The case is not one in equity where a fund has been created by the efforts of counsel and out of which on purely equitable grounds a court of equity may properly order reasonable compensation paid to counsel out of the fund. This case is not in equity and the fund could hardly be said to have been created by counsel." Since the contract for compensation had been made in and was intended to be performed mostly in Maryland, Judge Chesnut felt that the Maryland law should apply. He quoted at length from Ashman v. Schecter, 196 Md. 168, 76 A.2d 139, where the question before the court was whether the plaintiff, an attorney who had represented the defendant in a domestic dispute with her husband, was entitled to a lien for his fee on real property owned by the defendant. The Maryland court had said: "It is held almost universally at common law that an attorney who has been employed by a client to prosecute a

suit to secure the title to real property, and who wins a decree therefor, has no lien upon the property for his counsel fees. While there are a few contrary decisions, * * * we agree with the overwhelming majority of the decisions that to hold that an attorney has a lien upon real property recovered in an equity suit for his counsel fees would be an unwarranted and dangerous extension of the attorney's lien. * * *" 196 Md. at page 176, 76 A.2d at page 143. Judge Delaplaine noted in passing that a charging lien which binds a judgment recovered through the attorney's efforts has never been recognized in Maryland. The Ashman case, however, did not deal either with a fund created by counsel or a fund in the possession and control of the court. There was therefore no basis for the application of the equitable principles which were discussed and applied in the cases cited above.

■■■ Under the facts and circumstances of this case, the principles of equity authorize this court to allow to Jacobs' attorneys out of the $20,072.91 now in the custody and control of this court a reasonable fee for their services in creating that fund. On the other hand, the attorneys are not entitled to an allowance from the fund for that part of their services which they rendered in defending Jacobs against the demands of the government. Wessinger v. Sturkie, supra. The claim filed by Covington & Burling is for a fee of $6,500, plus $189.-33 traveling expenses, a total of $6,689.-33. The claim of Piper & Marbury is for $750. It appears from the evidence that after the fees for preliminary work had been billed and paid, a senior partner of Covington & Burling spent 44¾ hours on the case; McKay spent 501 hours; Wilcox, the other associate who participated in the trial, 207½ hours; other associates and law clerks, 327¼ hours. In fixing a fee, the time spent, the amount involved, the intricacy of the problems, the skill required, the opposition met, the results achieved, and the customary charges for similar services should be considered.[1] The entire case was extremely complex; the equitable principles upon which the $20,072.91 allowance was made to Jacobs were seriously disputed by the government; and the results obtained were as good as could reasonably have been expected, although, no doubt, Jacobs was disappointed. His attorneys tried the case with ability and devotion to Jacobs' interests. His criticism of them was entirely unjustified. A reasonable fee for all the services they rendered Jacobs would exceed the amount claimed. However, in view of all the circumstances, including the small fee already paid, it would not be fair to allow more than $6,000 as a fee for creating the fund. That amount will be allowed to Covington & Burling out of the fund, leaving it to them to pay a portion of the fee to Piper & Marbury, since the latter firm did not take any active part in the trial and it is impossible to determine on the present record what amount, if any, they should be allowed from the fund.

1. Canon 12 of the Canons of Professional Ethics of the American Bar Association, which has been adopted by the Maryland State Bar Association, includes the following paragraph: "In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

In view of the fact that Jacobs has refused to endorse the check or to execute a release to the government, some further proceedings will have to be taken. In the meantime, the Clerk is instructed to continue to hold the check, subject to further order of the court.

### Supplemental Opinion and Order

Immediately after filing my opinion of November 6, 1959, I wrote a letter to Jacobs, who was then, as now, living in Victoria, British Columbia, Canada. I told him that I had carefully considered all the matters referred to in his letter of September 28, 1959, as well as the evidence offered by Covington & Burling (who, together with Piper & Marbury, will be hereinafter referred to as counsel), that the opinion of November 6, 1959 constituted my findings of fact and conclusions of law on counsel's petition, that the entire case had to be brought to a conclusion, and that it was highly desirable that Jacobs either take care of the matter himself or appoint someone in this jurisdiction to take care of the matter for him.

Jacobs replied, stating that he had never had a proper opportunity to answer the petition of counsel and to present his side of the case. I concluded that he should be given a further opportunity to answer the petition and to present evidence in opposition thereto.

On December 15, 1959 Jacobs filed a 23-page, single-spaced "Answer to Petition of Counsel for Lien".

On December 21, 1959 the Government filed a motion for return of the $20,072.91 check. Jacobs has filed an answer and counsel have filed a memorandum in opposition to the Government's motion.

On January 20, 1960, Jacobs filed a "Motion for Settlement of Lien by State of Maryland, and Counterclaim" against the United States and the State of Maryland.

After much correspondence with Jacobs, all of the open matters in the instant case were set for hearing on September 9, 1960. A few days before that date, Jacobs wrote that he would not attend the hearing, but in view of all the circumstances, including the correspondence, which will be made a part of the record, I concluded that the hearing of the instant case should proceed, although I postponed hearings in three other actions recently filed by Jacobs against the Government.

### I.

### The Petition of Counsel for Lien

The long answer filed by Jacobs to the petition of counsel contained many allegations of fact, inferences, innuendoes and conclusions. Counsel agreed at the hearing that the Court might consider all of the allegations of fact contained in the answer as testimony of Jacobs offered in opposition to the petition of counsel, but counsel did not admit the facts, inferences, innuendoes and conclusions. James C. McKay, Esq., then testified and offered various exhibits with respect to all issues raised by Jacobs as to what counsel had done and had not done. It is unnecessary to set out the facts in detail. On all disputed questions I find the facts to be as set out in the testimony of McKay and in the other evidence offered by counsel; specifically I find that counsel were not guilty of any breach of contract, breach of good faith, or failure to act in accordance with the highest standards of professional conduct; and I reaffirm the findings of fact and conclusions of law set out in my opinion of November 6, 1959, except for two very minor errors which have been corrected by interlineation on the original opinion.

### II.

### The Counterclaim of Jacobs against the Government for Use and Sales Taxes

On February 18, 1958 the Fourth Circuit granted leave for this District Court "after the termination of the action instituted by Jacobs in the state court, to consider and pass upon any motion which he may present to reopen this case for the purpose of having adjudicated the liability of the United States for the use and sales taxes in controversy." Ja-

cobs v. United States, 252 F.2d 296, at page 297. On April 17, 1958 the action instituted by Jacobs in the state court was terminated; the Court of Appeals of Maryland dismissed the appeal taken by Jacobs from the judgment of the Circuit Court for Montgomery County. Jacobs Instrument Co. v. Comptroller, 216 Md. 290, 140 A.2d 285.

On January 2, 1959, the Comptroller of the Treasury of the State of Maryland asserted a lien in the amount of $1,504.04 "on all moneys paid in this court by the United States in satisfaction of the judgment in the amount of $20,072.91 entered by this court in the above entitled action on December 29, 1955 in favor of the defendant, Donald H. Jacobs, doing business as The Jacobs Instrument Company". The lien was based on the judgment entered in the Circuit Court for Montgomery County in the amount of $1,904.62, less credits, plus interest.

On January 20, 1960 Jacobs filed herein a paper entitled "Motion of Defendant for Settlement of Lien by State of Maryland, and Counterclaim". After alleging various facts, he prayed:

"(1) That this Honorable Court order the plaintiff to pay to the Comptroller of the State of Maryland the amount of sales and use tax which it feels it owes to said Comptroller by virtue of Contract NOrd–10531 having been performed in the State of Maryland. * * *

"(2) That this Honorable Court order the State of Maryland to pay to the defendant the sum of $500,000 for the harassment and physical injury resulting therefrom, as well as the business lost during defendant's attempts to determine what items were being taxed, what tax laws were involved, whether the sales and use tax acts are constitutional, etc. * * *

"(3) That this Honorable Court order the United States to pay $500,000 to the defendant for its part in the above-outlined matter, and for failing to honor its contract obliga-

tions as defined in Article 27 of Contract NOrd–10531. The jurisdictional basis here is 28 USC 1346(b). * * *

"(4) That this Honorable Court order the United States and the State of Maryland, and any and all persons under their control, to refrain from inflicting financial, legal, or physical harm on Mr. and Mrs. Donald H. Jacobs from the present time until six months after the hearing of this matter. * * *

"(5) That this Honorable Court order the United States to consider as allowable and reimbursable items of cost under Contract NOrd–10531, as part of the termination costs of that contract, all expenses (including the travelling and living expenses of defendant and his wife) incidental to gathering material and witnesses for the determination of this matter, as well as the other matters which will presumably be simultaneously considered. Defendant estimates that it will take a minimum of three months, after notice, to prepare for these hearings."

The government has moved to dismiss the motion for various reasons. After carefully considering the allegations of this motion, I conclude that it does not allege any facts showing that the United States is liable under the terms of Contract NOrd–10531, or otherwise, for the particular use or sales taxes which were the basis for the judgment of the Circuit Court for Montgomery County. This District Court has no jurisdiction to consider the claim of Jacobs against the State of Maryland, nor most of the other relief prayed against the United States. So far as this Court may have such jurisdiction, the motion alleges no facts upon which such relief may be granted. The motion and counterclaim are hereby denied and dismissed without leave to amend.

The asserted lien of the State of Maryland is reserved for future hearing.

## III.

### The Government's Motion for Return of Check

The decree of this Court entered on December 29, 1955, was affirmed by the Fourth Circuit, Jacobs v. United States, 1956, 239 F.2d 459, certiorari denied 353 U.S. 904, 77 S.Ct. 666, 1 L.Ed.2d 666. That decree, inter alia, required defendant Jacobs to deposit the documents sought by plaintiff Government with the Clerk of this Court, to be delivered to the United States:

" * * * upon the deposit by the plaintiff with the Clerk of a check or checks in the aggregate amount of $20,072.91, payable to Donald H. Jacobs, and a statement that the Government will not appeal from this decree; (d) that the Clerk shall release and deliver to Donald H. Jacobs said check or checks aggregating $20,072.91 upon order of this Court and upon the deposit by the defendant with the Clerk of (1) a certificate of compliance with the Patent Provisions of Contract NOrd–10531, as amended, said certificate to be signed by the defendant and approved by the Contracting Officer, which approval shall not be unreasonably withheld, and (2) a release to the United States in the form attached to this decree as part hereof."

The form attached to the decree would release "the Government, its officers, agents and employees of and from all liabilities, obligations and claims whatsoever in law and in equity, under or arising out of Contract NOrd–10531; except such rights as are reserved to the undersigned Donald H. Jacobs by the decrees of the United States District Court for the District of Maryland in the suit entitled United States of America vs. Donald H. Jacobs, doing business as The Jacobs Instrument Company, Civil No. 7459 in said Court."

The Government has received access to and copies of the documents which it desired. The Government has therefore received all the relief to which it was entitled, except the execution by Jacobs of a release discharging the Government from all liabilities, obligations and claims under or arising out of Contract NOrd–10531.

Jacobs refuses to execute such a release and refuses to endorse the $20,072.-91 check. If the only parties in interest were Jacobs and the Government, it might be proper to order the Clerk to return the check to the Government, so that the Government might deduct therefrom the 1954 income tax, which was assessed against Jacobs on March 19, 1958 in the amount of $7,963.09 (including $626.62 statutory additional), and pay the balance to Jacobs upon such conditions as might now be appropriate.

But Jacobs and the Government are not the only parties in interest. This Court has found that Covington & Burling are entitled to a fee of $6,000 out of the fund represented by the $20,072.91 check now in the custody and control of this Court. And the State of Maryland has asserted a lien against that fund. These facts distinguish the instant case from the cases cited in the Government's memorandum.

If the refusal of Jacobs to execute the release were doing the Government any real harm, there would be greater strength in the Government's position, perhaps sufficient to defeat the liens asserted by counsel and by the State. However, the United States Attorney has conceded that the only claim which has been made by Jacobs which would come within the terms of the proposed release is the claim made in the "Counterclaim" with respect to use and sales taxes. I have dismissed that claim in section II of this opinion and order, supra. If no appeal is taken from this order, or if it is affirmed on appeal, there will be no claim pending against the Government which would come within the terms of the proposed release, and it is too late now for Jacobs to file and maintain any new claims under or arising out of Contract NOrd–10531.

 This case is and has been from the start an unusual and exceptional case. It is the duty of the court to do justice and equity between all the parties. I have found that counsel have a lien on the fund represented by the check. That lien is superior to the asserted lien of the State of Maryland, superior to the claim of the United States to have the check redelivered to it, and perhaps even superior to the claim of the United States to set off the 1954 income tax which was assessed after the check had been delivered to the Clerk of this Court and after counsel had asserted their lien. Cf. Malman v. United States, 2 Cir., 1953, 202 F.2d 483; 207 F.2d 897. In any event, the fund is large enough to cover both the lien of counsel and the Government's claim for income tax. Cf. Malman, supra, and Morgan v. United States, D.C.S.D.N.Y.1955, 131 F.Supp. 783. The fund should be made available to satisfy the proper claims against it by depositing the check in the Registry of this Court.

Although it is a close question, it would appear that the District Court has the power, under 28 U.S.C.A. § 2041, F.R.Civ.P. 60(b) (5) and (6), 28 U.S.C.A., to enter the following order without further authority from the Court of Appeals. See 7 Moore, Federal Practice, sec. 60.26(2), p. 276, and sec. 60.27(1), p. 295. See also F.R.Civ.P. 1, 64, 66 and 67. However, to avoid any doubt, I will stay the effect of the order to permit an appeal by any party in interest.

 The appointment of a receiver is justified by the principles stated in Bray v. Staples, 4 Cir., 1910, 180 F. 321, and 75 C.J.S. Receivers § 11. It is desirable that the Clerk be appointed receiver to save the expense of an outside receiver and because the only duty required of the receiver will be to endorse the check and deposit it in the Registry of the Court. Such an appointment is not prohibited by 28 U.S.C.A. § 957(a). See Quinton v. Neville, 8 Cir., 1907, 154 F. 432, 440.

It is, therefore, ordered that Wilfred W. Butschky, Clerk of this Court, be and he is hereby appointed receiver of the fund represented by the $20,072.91 check, with instructions to endorse the said check "Donald H. Jacobs, trading as The Jacobs Instrument Company, by Wilfred W. Butschky, Receiver", and to deposit the check in the Registry Account of this Court, subject to the further order of this Court.

But this order is hereby stayed and the Receiver is directed not to endorse and deposit the check until the time for appeal from this order has expired or until any timely appeal therefrom has been finally disposed of by the United States Court of Appeals for the Fourth Circuit.